A97A0677. BUNN-PENN et al. v. SOUTHERN REGIONAL MEDICAL CORPORATION et al.
(488 SE2d 747)

ANDREWS, Chief Judge.

Cheryl Bunn-Penn brought an action alleging that, while she was a patient in the emergency room of Southern Regional Medical Corporation (the hospital) on October 13, 1992, John Mountz, an emergency room technician employed by the hospital, assaulted her by fondling her breasts and inserting his fingers into her vagina without her consent while she was sedated. As defendants, she named Mountz, the hospital, and Kay Neal, a nurse manager in the emergency room. The action sought compensatory and punitive damages and set forth separate counts alleging negligence, professional negligence, negligent hiring and retention, assault and battery, and intentional infliction of emotional distress. Bunn-Penn's husband also joined the action in asserting a loss of consortium claim.

The hospital and Neal moved for summary judgment on all counts. The trial court granted summary judgment in favor of the hospital and Neal on all counts, and Bunn-Penn and her husband appeal. They contend the trial court erred by granting summary judgment in favor of the hospital and Neal on the claims for negligent hiring and retention, professional negligence, loss of consortium, and punitive damages. They concede that, if the trial court correctly granted summary judgment on the negligent hiring and retention and professional negligence claims, then the claims for loss of consortium and punitive damages also fail. They also enumerate as error that the trial court improperly excluded certain evidence as hearsay in its consideration of the summary judgment motion.

1. Since our review of the record is de novo, we examine all of the evidence proper for consideration on summary judgment to determine if an issue of material fact remains for determination, regardless of whether the trial court considered all of the evidence below. *Taylor v. Schander*, 207 Ga. App. 627 (428 SE2d 806) (1993).

The hospital produced the affidavit of Deborah Boatwright to show the process by which Mountz was hired as an emergency room technician. Boatwright also gave sworn testimony on this issue in her deposition. Boatwright testified that Mountz went through an

application and interview process which verified that he was a trained, licensed, and experienced emergency medical technician. In the written application for employment completed by Mountz, which required disclosure not only of education and work experience but also criminal history, Mountz stated that he had never pleaded guilty or been convicted of a crime more serious than a traffic offense. There is no evidence in the record that Mountz had any such criminal history. He was interviewed by a recruiter from the hospital's human resources department and by the director of nursing. In checking employment history, the hospital contacted Fayette County where Mountz was then employed as a firefighter and emergency medical technician and received a satisfactory report. After this process, Mountz was hired by the hospital as an emergency room technician in June 1989.

The hospital's director of nursing provided an affidavit stating that Mountz thereafter received high ratings during an initial performance appraisal period ending in September 1989 and in subsequent reviews. In his first annual employment review in June 1990, Mountz received high performance ratings and was described as "pleasant in working with patients and staff. . . ." In his second annual employment review in June 1991, Mountz again received consistently high performance ratings and was praised in the evaluation as "an asset to the department [and] [w]ell organized and a hard worker." In June 1992, in his third annual employment review about four months prior to the alleged sexual assault, Mountz again received high ratings and was described as "a diligent worker and an asset to our department." In September 1992, the month prior to the alleged sexual assault, Mountz received the hospital's "Employee of the Month" award.

Neal, the nurse manager of the hospital's emergency department from September 1989 through May 1992, stated by affidavit and deposition that sometime in the latter part of 1990 or early 1991, nurses Amy Wernert-Yarion and Julia Olivier told her that they were concerned that Mountz's behavior around female patients was sometimes inappropriate in that he was "quick to help female patients get their clothes off . . ." and was "lingering" in patient's rooms when the patients were undressing. Neither nurse could tell Neal of any specific incident where Mountz's behavior raised these concerns, and neither nurse had ever heard any patient complain about Mountz. Neal testified that, although male employees did not routinely assist in dressing or undressing female patients, it depended on the circumstances, and in critical situations "everybody pitches in regardless of sex." Thereafter, Neal observed Mountz more closely and saw nothing out of the ordinary in his performance.

Nurse Olivier confirmed in her deposition that in the latter part

of 1990, she told Neal that there had been some instances where she told Mountz to leave a female patient's room when it was not necessary for him to be there. After Neal suggested to her that she raise her concerns directly with Mountz, Olivier testified that she talked to Mountz and told him to watch himself in those circumstances and that she did not have any problems with Mountz after that time. She testified that all the patients liked Mountz, complimented him a lot, and that she had never heard any complaints.

Nurse Wernert-Yarion also confirmed in her deposition that she and Olivier spoke to Neal about Mountz. She said that on several occasions she noticed that, while a female patient was being undressed, Mountz would stay in the room when in her opinion he should have realized, as other male technicians did, that it was inappropriate for him to remain. She testified that, after they spoke with Mountz about the problem, he agreed to watch his behavior and he improved. She stated that no patients ever complained about Mountz.

Nurse Donna Coker testified by deposition of one instance where she noticed that Mountz was about to assist a female patient with a bedpan, that she thought it was inappropriate for him to do so, and that she took over from Mountz and assisted the woman. Although Coker denied that she expressed any other concerns about Mountz's behavior, this testimony was clearly contradicted in an affidavit given by a Clayton County detective who said Coker told him that she had complained about Mountz going into the treatment rooms and watching female patients undress and that Olivier had spoken to Neal about this concern.[1]

Nurse Sherrye Ayers-Drew testified by deposition that she knew of two instances where Mountz placed female patients on bedpans while she was in the room. She testified that, although Mountz acted very professionally in those situations, it was not the normal procedure for male technicians to place female patients on bedpans unless extra strength was needed with a large person, and she mentioned the incidents to Olivier.

2. Bunn-Penn's negligent hiring and retention claim against the hospital is based on her allegation that she was injured when Mountz fondled her breasts and inserted his fingers into her vagina without her consent while she was sedated — acts which would constitute sexual battery (OCGA § 16-6-22.1) and aggravated sexual battery (OCGA § 16-6-22.2). Accordingly, "[f]or [the hospital] to be negligent

---

[1] Since the detective's affidavit on this point was substantive evidence of a prior inconsistent statement by the witness, the trial court erred to the extent it excluded it from consideration as non-probative hearsay. *Cooperwood v. Auld*, 175 Ga. App. 694 (334 SE2d 22) (1985).

in hiring and retaining an employee with violent and criminal propensities, it would be necessary that [the hospital] knew or should have known of those dangerous propensities alleged to have resulted in appellant's injuries." *Edwards v. Robinson-Humphrey Co.*, 164 Ga. App. 876, 880 (298 SE2d 600) (1982).

Assuming, arguendo, that there would be evidence sufficient to show that Mountz committed the alleged acts, the present record contains no evidence which would authorize a jury to conclude that the hospital knew or should have known that Mountz was prone to commit such acts. Although there was evidence of concerns that Mountz was sometimes inappropriately in female patients' rooms while the patients were undressing and helped or attempted to help female patients with bedpans on three occasions when a female rather than a male technician would normally do so, the evidence shows that these concerns were resolved and Mountz ceased this behavior about a year and a half prior to the alleged sexual assault. In any event, the hospital's knowledge of these concerns would not have put it on notice that Mountz had a propensity to commit the sexual assault alleged by Bunn-Penn. See *Alpharetta First United Methodist Church v. Stewart*, 221 Ga. App. 748, 752-755 (472 SE2d 532) (1996). The record shows that no patients ever complained about Mountz and that he received consistently high performance ratings, even receiving the hospital's "Employee of the Month" award the month prior to the alleged assault.

There being nothing in the record showing that the hospital failed to exercise ordinary care in the hiring process or in its retention of Mountz, the trial court properly granted summary judgment on this claim in favor of the hospital. OCGA § 34-7-20. That the trial court may not have considered all of the evidence proper for consideration below was harmless error. *Taylor*, supra.

On the same facts, Bunn-Penn also claims that Neal, the nurse manager of the hospital's emergency room department, is individually liable, not for hiring Mountz, but for his retention after he was hired by the hospital. There is no merit to this claim, and the trial court properly granted summary judgment in favor of Neal.

3. Bunn-Penn also claims that Neal, by virtue of her position as the nurse manager of the emergency room department where Mountz worked, is liable for professional negligence as a nurse. This claim is apparently made on the theory that it was below the standard of nursing care to allow Bunn-Penn to be exposed to the risk of being assaulted by Mountz. She claims the hospital is liable for the professional negligence of Neal on the basis of respondeat superior.

Even if there had been evidence sufficient to support a claim that, through knowledge acquired by its nurse employee, Neal, after Mountz was hired, the hospital knew or should have known that

Mountz had a propensity to sexually assault a female patient, this would have been support for a claim against the hospital for ordinary negligence in retaining Mountz as an employee, not support for a professional negligence claim against Neal and the hospital for providing below standard nursing care. Although Bunn-Penn filed an affidavit pursuant to OCGA § 9-11-9.1 (a), the expert affidavit of a nurse is necessary to support a claim for professional negligence by a nurse only where the alleged act or omission by the nurse requires the exercise of professional nursing skill and judgment. See *Lamb v. Candler Gen. Hosp.*, 262 Ga. 70, 71 (413 SE2d 720) (1992). It was not a matter within the professional nursing skill and judgment of Neal or any other nurse employed by the hospital to protect Bunn-Penn by assessing whether or not Mountz had a propensity to commit the alleged sexual assault. See *Candler Gen. Hosp. v. McNorrill*, 182 Ga. App. 107, 109-111 (354 SE2d 872) (1987); OCGA § 43-26-1 et seq. There was no basis for this claim, and the trial court properly granted summary judgment in favor of Neal and the hospital.

*Judgment affirmed. Birdsong, P. J., Beasley and Smith, JJ., concur. McMurray, P. J., Ruffin and Eldridge, JJ., dissent.*

McMurray, Presiding Judge, dissenting.

I respectfully dissent. Evidence was presented of repeated inappropriate professional behavior with female patients (bordering on unhealthy, voyeuristic tendencies) on the part of defendant John Mountz, the emergency room technician employed by appellee-defendant Southern Regional Medical Corporation. This is strong evidence which a jury could find was notice to defendant Southern Regional Medical Corporation of anticipatory sexual misconduct. Since several co-workers had confided their concerns about John Mountz's behavior to the nurse manager, Kay Neal, that evidence of professional misconduct of an unhealthy and unprofessional attraction to female patients was, in my view, more than sufficient to put the hospital on notice that defendant John Mountz might take inappropriate liberties with sedated female patients. Consequently, a jury question is presented as to plaintiffs' claim for negligent retention (although not negligent hiring). As my colleagues in the majority would affirm the grant of summary judgment in its entirety, despite the existence of genuine issues of material fact as to this theory of liability, I respectfully dissent.

I am authorized to state that Judge Ruffin and Judge Eldridge join in this dissent.

DECIDED JULY 11, 1997.

*Manely & Silvo, Michael E. Manely, Lorraine R. Silvo, Wheeler & Watson, James A. Watson,* for appellants.

*Mayfield & Milling, Roberts C. Milling II, Alston & Bird, Dow N. Kirkpatrick II,* for appellees.