Ashley A. MORGAN, Plaintiff,

v.

FELLINI'S PIZZA, INC., Michael J. Tenner, and Brett Yasko, Defendants.

No. CIV.A. 1:97–CV–3872–JTC.

United States District Court, N.D. Georgia, Atlanta Division.

March 30, 1999.

R. Ann Grier, Mozley Finlayson & Loggins, Atlanta, GA, for Ashley Morgan, plaintiff.

Marvin Dewayne Dikeman, Samuel Robinson Arden, Webb Carlock Copeland Semler & Stair, Atlanta, GA, for Fellini's Pizza, Inc, defendants.

Michael J. Tenner, Mark C. Harper, Findling & Harper, Atlanta, GA, for Michael J. Tenner, defendants.

## ORDER

CAMP, District Judge.

This case is before the Court on the Report and Recommendation of the Magistrate [# 23–1] and Plaintiff's Objections thereto [# 24–1]. The Magistrate recommended that this Court grant Defendant's Motion for Summary Judgment [# 10–1].

After a careful, *de novo* review of the Magistrate's Report and Plaintiff's objections, the Court declines to accept the Magistrate's recommendation.

## I. BACKGROUND

Plaintiff Ashley Morgan worked as a server at the Peachtree Road location of Fellini's Pizza from May 1996 through early January 1997. Plaintiff quit her job with Fellini's on January 4, 1997, telling her supervisor, Jim Agee, that she had been sexually harassed and that she could no longer continue her employment at the restaurant as a result. Plaintiff contends that during her employment with Fellini's, two of her co-workers, Michael Tenner and Brett Yasko, repeatedly subjected her to unwelcome and offensive comments and requests of a sexual nature, as well as unwelcome and offensive touching. Plaintiff further alleges that her immediate supervisors at Fellini's, Jim Agee and Martin Perkins, were often present during such harassment, were well aware of the harassment, and took no action to prevent the conduct.

As a result, Plaintiff brings suit against Fellini's Pizza for hostile environment sex-

ual harassment pursuant to Title VII of the Civil Rights Act of 1964, and the Civil Rights Act of 1991 and for negligent retention of one of the alleged harassers. In addition, Plaintiff brings claims for assault and battery and intentional infliction of emotional distress under Georgia law against Fellini's and her two former co-workers individually.

Defendant Fellini's has moved for summary judgment with respect to all of Plaintiff's claims against it, arguing that the evidence in the record demonstrates that Plaintiff cannot prove a claim of sexual harassment pursuant to Title VII and that Fellini's cannot be held accountable for the allegedly intentional torts of its employees acting outside the scope of their authority under Georgia law. Finally, Fellini's contends that there is no evidence to support Plaintiff's claim that it negligently retained employee Mike Tenner after alleged problems at another Fellini's location.

Plaintiff opposes the motion, arguing that there is sufficient evidence in the record from which a reasonable jury could find that she was subjected to hostile environment sexual harassment and that Fellini's is liable for it. Further, Plaintiff claims that there is sufficient evidence that Fellini's knew of the intentional misconduct of Tenner and Yasko to support a finding that it is liable for her state law tort claims as well.

## II. SUMMARY JUDGMENT

### A. Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure defines the standard for summary judgment: Courts should grant summary judgment when "there is no genuine issue as to any material fact ... and the moving party is entitled to judgment as a matter of law." The substantive law applicable to the case determines which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "The district court should 'resolve all reasonable doubts about the facts in favor of the non-movant,' ... and draw 'all justifiable inferences ... in

his favor ....' " *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir.1991). The court may not weigh conflicting evidence nor make credibility determinations. *Hairston v. Gainesville Sun Publishing Co.*, 9 F.3d 913, 919 (11th Cir.1993), *rh'g denied*, 16 F.3d 1233 (1994)(en banc).

As a general rule, "[the] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). However, the moving party's responsibility varies depending upon which party bears the burden of proof at trial on the issue in question.

For issues upon which the moving party bears the burden of proof at trial, the moving party must affirmatively demonstrate the absence of a genuine issue of material fact as to each element of its claim on that legal issue. It must support its motion with credible evidence that would entitle it to a directed verdict if not controverted at trial. If the moving party makes such a showing, it is entitled to summary judgment unless the non-moving party comes forward with significant, probative evidence demonstrating the existence of an issue of fact. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir.1993) (quoting *Four Parcels*, 941 F.2d at 1437–38).

On the other hand, when the non-moving party bears the burden of proof at trial, the moving party is not required to support its motion with affidavits or other similar material negating the opponent's claim. Instead, the moving party may simply point out to the district court that there is an absence of evidence to support the non-moving party's case on the issue in question. *Id.* at 1115–16. Of course, the

moving party may offer evidence to affirmatively negate a material fact upon which the non-movant has the burden and which is essential to its claim. In either case, the non-moving party may not rely upon allegations or denials in the pleadings, but instead must respond with sufficient evidence to withstand a directed verdict motion at trial. Fed.R.Civ.P. 56(e); *Hammer v. Slater*, 20 F.3d 1137, 1141 (11th Cir. 1994) (citing *Fitzpatrick*, 2 F.3d at 1116–17).

In this case, the moving party—Defendant Fellini's—does not bear the burden at trial on Plaintiff's claims. Accordingly, Fellini's contends that there is an absence of evidence to support Plaintiff's claims. In addition, Fellini's has come forward with evidence that it claims affirmatively undermines Plaintiff's claims. Because Plaintiff bears the burden of proving her claims at trial, she must respond to this showing with sufficient evidence to withstand a directed verdict motion.

## B. Hostile Environment Harassment

■ Fellini's argues that it is entitled to summary judgment because the undisputed facts demonstrate that Plaintiff was not subjected to a hostile environment within the meaning of Title VII.[1] A hostile work environment is created when "the workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)(quoting *Meritor Savings Bank FSB v. Vinson*, 477 U.S. 57, 65, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)). In order to prove a prima facie case of hostile environment harassment, a plaintiff must demonstrate: (1) that the plaintiff is a member of a protected group; (2) that the plaintiff was subjected to unwelcome conduct; (3) the conduct was based on sex; (4) such con-

duct affected a term, condition, or privilege of employment; and (5) that liability against the employer is appropriate (i.e., the employer knew or should have known of the harassment and failed to take prompt remedial action). *See Henson v. City of Dundee*, 682 F.2d 897, 903–05 (11th Cir.1982); *Simon v. Morehouse School of Medicine*, 908 F.Supp. 959, 968–69 (N.D.Ga.1995)(Forrester, J.).

Fellini's contends that Plaintiff cannot meet her burden with respect to three separate elements of her claim. Defendant argues that Plaintiff cannot show that the conduct in question was unwelcome, that it affected a term or condition of her employment, or that Fellini's can be held responsible for the conduct as a matter of law. The Court will address each challenged element in turn.

## 1. Unwelcome Conduct

■ The Equal Employment Opportunity Commission's regulations counsel that conduct such as "sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature..." may constitute sexual harassment for purposes of Title VII. 29 C.F.R. § 1604.11(a). In order to constitute harassment, however, this conduct must be "unwelcome" in the sense that the employee did not solicit or incite it, and in the sense that the employee regarded the conduct as undesirable or offensive. *See Henson*, 682 F.2d at 903. In determining whether conduct was unwelcome, the nature of the sexual advances and the context in which they occurred are to be viewed in light of the totality of the circumstances at issue.

■ In looking at the entire context of the alleged harassment, a plaintiff's provocative speech or dress may be relevant. *See Meritor Savings Bank FSB v. Vinson*, 477 U.S. at 69, 106 S.Ct. 2399. It does not follow, however, that the "use of foul language or sexual innuendo in a consensual

---

1. Defendant also moved for summary judgment on any claim of quid pro quo harassment pursued by Plaintiff in this case. Be- cause Plaintiff has disavowed any quid pro quo claims in this action, the Court need not consider this ground for relief.

setting" waives that plaintiff's legal protections against unwelcome harassment. *Nuri v. PRC, Inc.,* 13 F.Supp.2d 1296, 1301 (M.D.Ala.1998).

Fellini's in this case relies upon alleged comments Plaintiff made to Mike Tenner to demonstrate that not only did she welcome this conduct, but that she actually solicited it. In addition, Fellini's argues that Plaintiff's failure to complain of the behavior to its supervisory personnel shows that she did not find the conduct offensive or unwelcome.

Plaintiff responds to this showing with her deposition and affidavit testimony flatly denying that she made any of the suggestive or flirtatious comments alleged by Tenner. Further, Plaintiff has offered her testimony that she was disturbed and offended by the conduct of her fellow employees at the time that it happened and that she told her alleged harassers that she was offended and asked them to desist.[2] Plaintiff has claimed that she made these comments to her harassers in the presence of Fellini's supervisors as a result of the close quarters in which all employees of the restaurant worked and that she did not specifically complain to these supervisors separately because of their presence during the incidents.[3]

■ The evidence offered by Plaintiff is sufficient to create a genuine issue of material fact and to survive a motion for directed verdict on her claims. The Court at the summary judgment stage is not entitled to assess the credibility of the varying accounts of the events that took place between Plaintiff and her co-workers. Therefore, drawing all reasonable inference in favor of the non-moving party, as it must, the Court concludes that a reasonable jury could find that the conduct of Tenner and Yasko was unwelcome as required by Title VII.[4] Accordingly, Fellini's motion for summary judgment on this basis is denied.

## 2. Term, Condition, or Privilege of Employment

■ The fourth element of a plaintiff's prima facie case in a hostile environment sexual harassment claim is that the harassment "affected a term, condition, or privilege of employment." This element contains both an objective and subjective component. To satisfy the objective component, a plaintiff must show that the alleged harassment was sufficiently severe or pervasive to create an environment that a reasonable person would find hostile or abusive. *Harris v. Forklift Sys. Inc.,* 510 U.S. at 21, 114 S.Ct. 367. To satisfy the subjective component, a plaintiff must demonstrate that she actually perceived the environment to be abusive. *Id.* at 21–22, 114 S.Ct. 367. Courts consider a number of factors in determining whether this element is satisfied, including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 23, 114 S.Ct. 367.

---

**2.** For example, Plaintiff testified: "I didn't know for it to be sexual harassment like from a law stance, but it was really disturbing and I didn't enjoy it, and it kind of scared me a lot of times, so I knew there was something not right there." (Morgan Depo. P.93–94).

**3.** Ms. Morgan's failure to raise complaints with her supervisors at Fellini's will be more thoroughly discussed below with respect to Fellini's argument that it did not know or have reason to know of the conduct alleged. It is mentioned here only as it relates to the "unwelcome" nature of the alleged behavior of Mr. Tenner and Mr. Yasko.

**4.** Plaintiff's supervisor, Martin Perkins, has testified that the one sexually explicit comment made to Plaintiff that he did overhear was "over the line" and that he talked to Tenner and Plaintiff about the comment because he was concerned that it might have "bothered" Ms. Morgan. Although, Ms. Morgan denies that Mr. Perkins ever talked to her about the comment or that he reprimanded her harasser, this testimony by Mr. Perkins could lead a reasonable jury to believe that the conduct he observed was not welcome.

In support of its motion for summary judgment, Defendant argues that "Plaintiff's reaction to the alleged harassment did not affect a tangible aspect of her compensation, terms, conditions, or privileges of employment because ... she had no negative reaction to the alleged conduct. Even leaving Plaintiff's complete failure to react aside, she has conceded that she suffered no adverse consequences due to the alleged unwelcome conduct."

■ The Supreme Court has recognized two types of sexual harassment: quid pro quo harassment and hostile environment harassment. *See Burlington Indus. Inc. v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998). For both types of harassment, the conduct must affect a term or condition of the plaintiff's employment. *Id.* In quid pro quo harassment, where an "employer [has] demanded sexual favors from an employee in return for a job benefit, discrimination with respect to terms or conditions of employment [i]s explicit." *Id.* 524 U.S. 742, 118 S.Ct. at 2264. When an employer discriminates through sexually demeaning behavior alone, however, the harassment may cause a "constructive alteration" of the terms and conditions of employment rather than an explicit one tied to a tangible job benefit. *Id.* In order for such behavior to cause such a constructive alteration, it must only be sufficiently severe or pervasive from an objective and subjective standpoint. *Id.*

■ It is well settled, therefore, that "Title VII does not require that the aggrieved employee suffer a nervous breakdown" or that the employee lose a tangible job benefit. *See Simon v. Morehouse School of Medicine*, 908 F.Supp. 959, 969 (N.D.Ga.1995) (adopting the report and recommendation of Magistrate Feldman denying defendant's motion for summary judgment). Rather, as set forth above, Title VII requires an inquiry into all the circumstances surrounding the harassing conduct to determine the requisite severity or pervasiveness.

■ Turning to the objective prong of the inquiry, Plaintiff has presented evidence from which a reasonable jury could find that there was harassment that was severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive.[5] Plaintiff provides evidence she worked in close proximity with her alleged harassers and that she was subjected to repeated lewd and vulgar requests, comments, and gestures directed at her personally over a period of approximately one month. In addition, Plaintiff claims that Defendant Tenner and others physically locked her in the cooler at Fellini's restaurant and held her down while harassing her by marking her face with a permanent pen. Plaintiff contends that many of these actions were taken in the presence of her supervisors at the restaurant. Indeed, her supervisor Martin Perkins admits hearing one particularly lewd request Tenner made to Plaintiff in his presence.

While Defendants and others dispute Plaintiff's testimony that many of these comments and actions took place, the statements and conduct she attributes to Tenner and Yasko could well be viewed by a reasonable person as hostile and abusive. Because this Court cannot make the credibility determinations necessary to resolve the disputed facts regarding these incidents, the issue of whether the environment to which Plaintiff was subjected was objectively hostile must be left to the jury.

Similarly, Plaintiff has testified that she subjectively perceived the behavior of Tenner and Yasko as hostile and abusive and that she was so disturbed by it that she quit her job with Fellini's. While a factfinder may ultimately determine that Plaintiff did not find the conduct abusive as Fellini's argues, a reasonable jury could find otherwise based upon Plaintiff's testi-

---

5. Indeed, Michael Nelson, 50% owner of Fellini's and the Company's Vice President, concedes that the alleged behavior would clearly rise to the level of hostile environment harassment if it did occur. (Nelson Depo. P. 45).

mony. Therefore, Plaintiff has presented sufficient evidence to survive summary judgment as to the prima facie element of her case that the conduct affected a "term or condition" of her employment with Fellini's. *See Simon v. Morehouse School of Medicine,* 908 F.Supp. 959 (N.D.Ga.1995)(genuine issues of material fact precluded summary judgment for defendant in hostile environment sexual harassment case); *Powell v. Haverty Furniture Companies, Inc.,* 912 F.Supp. 532, 536 (M.D.Ga.1996)(denying summary judgment for defendant in hostile environment sexual harassment case where depositions in the case indicated a genuine question of material fact with respect to whether the harassment affected a term or condition of employment).

### 3. Liability of Fellini's

### a. The Standard

■ To prove that her employer is directly liable for the hostile environment sexual harassment of a co-worker, a plaintiff must show that the employer knew or should have known of the harassment and failed to take prompt action to remedy the situation. *See Coates v. Sundor Brands, Inc.,* 164 F.3d 1361 (11th Cir.1999)(affirming grant of summary judgment for employer for sexual harassment by co-worker where it took prompt action upon receiving notice of problem); *Splunge v. Shoney's, Inc.,* 97 F.3d 488, 490 (11th Cir.1996) (liability for hostile environment sexual harassment exists only where "corporate defendant knew or should have known of the harassment and failed to take prompt remedial action.").

While the Parties have addressed the proper standard for employer liability in this case in some sections of the briefing, they have confused the standard with the one recently handed down by the Supreme Court in *Faragher v. City of Boca Raton,* 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) in others. *Faragher* held that employers are vicariously or "indirectly" liable for sexual harassment perpetrated by supervisory personnel, but that employ-

ers have an affirmative defense to liability based upon the reasonableness of the employer's conduct with respect to sexual harassment as well as that of the plaintiff. The Supreme Court decision by its reasoning and express language applies only in cases involving harassment by supervisory personnel. *Faragher,* 524 U.S. 775, 118 S.Ct. at 2293 ("an employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee."). Indeed, the Court specifically distinguished between the situation presented when a supervisor perpetrates hostile environment harassment and the one presented by a co-worker's similar behavior. *Id.* 524 U.S. 775, 118 S.Ct. at 2291 ("When a fellow employee harasses, the victim can walk away or tell the offender where to go, but it may be difficult to offer such responses to a supervisor whose power to supervise -[which may be] to hire and fire, and to set work schedules and pay rates—does not disappear ... when he chooses to harass through insults and offensive gestures rather than directly with threats of firing or promises of promotion."). Because the supervisory relationship created by the employer "aids" in the harassment by making it more difficult for the victim to object or complain, vicarious liability is appropriate under general principles of agency law.

Following the decision in *Faragher,* the Eleventh Circuit has continued to apply a negligence or "direct liability" standard when analyzing an employer's liability for a hostile environment created by a co-worker with no supervisory authority. *See Coates v. Sundor Brands, Inc.,* 164 F.3d 1361, 1363–64 (11th Cir.1999). The Court notes that Judge Barkett issued a special concurrence in *Coates* finding that the vicarious liability announced in *Faragher* is equally applicable when a supervisor fails to take any action in the face of harassment by one co-worker against another. Although Judge Barkett concurred in the result reached in *Coates,* she based this

finding on the employer's demonstration of the affirmative defense outlined in *Faragher*.

This Court declines to adopt this extension of *Faragher* where the Eleventh Circuit has not yet adopted such an extension and where the reasoning of the Supreme Court as set forth above indicates that the standard was not intended to apply when co-workers and not supervisors are doing the harassing. To extend *Faragher* to sexual harassment by co-workers as well as supervisory personnel would operate to shift the burden on employer liability to defendant employers in all cases, a result not dictated by Supreme Court precedent or agency law.

Further, the *Faragher* standard is not applicable to this case as a result of Plaintiff's arguments in her brief that one of her supervisors participated in the harassment on a single occasion. First, the Court notes that this claim is not found anywhere in Plaintiff's complaint in this case. In addition, Plaintiff has offered no evidence in response to Defendant's motion for summary judgment to support her contention that this conduct by the supervisor in fact occurred. Finally, even assuming that the supervisor in fact engaged in the alleged behavior, a single isolated comment on one occasion would be insufficient as a matter of law to support a claim of severe or pervasive harassment by that supervisor as required by Title VII.

Accordingly, the standard of direct liability applies to Plaintiff's claims of harassment by her co-workers and she must present sufficient evidence from which a reasonable jury could conclude that Fellini's knew or should have know of the harassment and failed to take appropriate remedial action. In other words, the burden is on Plaintiff to demonstrate Fellini's negligence and not on Fellini's to prove an affirmative defense.

**b. Analysis**

■ A plaintiff can prove that an employer knew or should have known of harassment by showing that she com-

plained to higher management or by showing that the harassment was pervasive enough to charge the employer with knowledge. *Henson v. City of Dundee*, 682 F.2d 897, 905 (11th Cir.1982). While the term "higher management" used to determine whether the employer "knew" of the harassment has not been well-defined by the Eleventh Circuit, other circuits have adopted a helpful approach to this issue. *Nuri v. PRC, Inc.*, 13 F.Supp.2d 1296, 1304 n. 8 (M.D.Ala.1998) (discussing the approach adopted by the Seventh and Second Circuits and citing cases).

This approach identifies the appropriate person to whom an employee should complain of harassment as (1) someone who has the authority to terminate the harassment of which the employee is complaining, or (2) someone who is obligated to, or could reasonably be expected to, refer the complaint to someone described in (1). *Id.* This standard contemplates knowledge being attributed to the employer when someone in the company with authority over harassment matters, or someone who reports to such a person by virtue of his management responsibility, learns about the harassment. *Id.*

As Defendant argues, it is undisputed that Plaintiff did not complain to any supervisory personnel at Fellini's regarding the alleged harassment. Fellini's argues, therefore, that it cannot be charged with knowledge as a matter of law. Plaintiff has provided evidence, however, that the employees of Fellini's worked in very close quarters at almost all times during a shift and that the majority of the harassing comments, gestures, and requests were made within a few feet of the supervisor at Fellini's. Indeed, Plaintiff's supervisors and alleged harassers concede that they worked within a few feet of one another and Martin Perkins, the supervisor with whom Plaintiff worked most, admits that he overheard one particularly lewd comment Tenner made to Plaintiff.

It is undisputed that the managers at Fellini's are charged with supervision of all of the employees working on the shift and that they have authority to discipline those employees. Mr. Nelson, part owner and Vice President of Fellini's, testified that the Company counts on management at the store level to keep up with problems between employees and to monitor working conditions. He testified that it is the responsibility of "all managers" to make sure that employees working for them know and understand their rights and obligations. (Nelson Depo. pp. 28–29).

Plaintiff has testified that she did not formally or separately complain to her supervisor because he was present during the incidents and overheard what was being said to her. She claims that she didn't think she needed to complain because her supervisor could have disciplined the employees harassing her while it was going on. Instead, Plaintiff testified that her supervisor took no action and even indicated approval or amusement on some occasions. Plaintiff claims, therefore, that this knowledge of her supervisor should be imputed to Fellini's.

While Defendant denies that the majority of the incidents alleged by Ms. Morgan even took place, it concedes the authority and responsibility of its managers for employee problems such as harassment. Further, one of Plaintiff's supervisors admits overhearing at least one of the offensive comments. Although a reasonable jury could conclude that the incidents did not occur and that Fellini's did not know of any harassment, drawing all reasonable inferences in favor of Plaintiff, a reasonable jury could also conclude based upon the evidence presented by Plaintiff that the harassment occurred and that Fellini's knew of the harassment. Therefore, genuine issues of material fact preclude summary judgment for Defendant on this prong of the employer liability standard. *See Powell v. Haverty Furniture Companies, Inc.*, 912 F.Supp. 532, 536 (M.D.Ga. 1996) (denying summary judgment for defendant on employer liability where plaintiff claimed to have complained to her immediate supervisor in charge of her store, despite the supervisor's denial of any complaint, because evidence created a question of material fact to be resolved by the jury); *Simon v. Morehouse School of Medicine,* 908 F.Supp. 959, 970 (N.D.Ga.1995)(denying summary judgment for employer because a reasonable finder of fact could conclude that the treatment of plaintiff was apparent to management or should have been based on evidence of frequent and non-discrete sexual advances toward plaintiff); *Mills v. Amoco Performance Prod., Inc.*, 872 F.Supp. 975, 987 (S.D.Ga. 1994)("the conduct that occurred, if [plaintiff's] evidence is believed, consisted of a continual pattern of offensive, sexually suggestive, and explicit acts ... the alleged conduct was frequent and non-discrete; it would not easily go unnoticed by shift supervisors or others in managerial positions who interacted with [plaintiff] and her coworkers on a regular basis. Drawing all reasonable inferences from the summary judgment record in [plaintiff's] favor, as the Court must, a jury could find that [plaintiff's] mistreatment was conspicuous and should have been apparent to management."); *Robinson v. Jacksonville Shipyards, Inc.*, 760 F.Supp. 1486, 1529 (M.D.Fla.1991) (requiring employer to assume knowledge held by quasi-supervisory personnel who were relied upon to "monitor work performance" at "remote job sites.").

Even if Defendant were entitled to summary judgment with respect to its actual knowledge of the harassment at issue, Plaintiff may also succeed on her claim if she can show that Fellini's "should have known" of the behavior. At the outset, the Court notes that "an employer is insulated from liability under Title VII for a hostile environment sexual harassment claim premised on constructive knowledge of the harassment when the employer has adopted an anti-discrimination policy that is comprehensive, well-known to employees, vigorously enforced, and provides alternate avenues of redress." *Farley v.*

*American Cast Iron Pipe Co.*, 115 F.3d 1548, 1554 (11th Cir.1997). Fellini's contends that it cannot be charged with constructive knowledge of Plaintiff's claims because it had an anti-discrimination policy in place at the time of the alleged harassment that meets the requirements of *Farley* that Plaintiff signed upon being hired.

It is undisputed, however, that the "policy" consisted of a few sentences within a statement regarding employee obligations generally relating to serving alcohol to persons without valid identification, working hours, and discrimination. It is also undisputed that store managers did not review the policy or discuss sexual harassment or any of the other company policies with new hires. It is undisputed that new employees were not given a copy of the policy containing the names of the contact persons available to discuss problems. Instead, the policies signed by new employees were put into personnel files. It is undisputed that Fellini's did not post a copy of its policy regarding sexual harassment and other discrimination anywhere in its restaurants where employees would have access to it. It is undisputed that Fellini's managers received no training regarding sexual harassment prior to being hired into supervisory positions. It is undisputed that Fellini's owners delegated discussion of discrimination and other policies with employees to store managers and did not monitor that such communication and discussion actually occurred. None of Defendants' witnesses recall any employee being reprimanded or disciplined for harassment prior to the incidents reported by Plaintiff.

Construing all of these facts in a light most favorable to Plaintiff in this case, a reasonable jury could find that Fellini's policy was not "comprehensive," not so "well-known," and not "vigorously enforced." Accordingly, summary judgment for the Defendant based upon the existence of this policy would be inappropriate. *See Nuri v. PRC, Inc.*, 13 F.Supp.2d at 1305–06 (despite a number of efforts to distribute comprehensive and vigorously enforced sexual harassment policy, employer not insulated from liability based on constructive knowledge where those efforts were unsuccessful at location where plaintiff and her harassers worked).

■ Even if a jury were to find that Fellini's policy did not insulate it from liability, Plaintiff would still have to demonstrate that the harassment she faced was pervasive enough to charge the employer with constructive knowledge. This inquiry is distinct from the question of whether the environment is sufficiently hostile to support a claim for harassment in the first place. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 647 (11th Cir.1997). Factors considered to determine whether harassment is so pervasive as to provide constructive notice to an employer are: the remoteness of the location of the harassment, whether the harassment occurs intermittently over a long period of time, whether the victims were employed on a full or part time basis, and whether there were only a few discrete instances of harassment. *Id.*

Plaintiff has provided evidence that she was harassed repeatedly and openly in the presence of Fellini's supervisory personnel over approximately a one month period. While Plaintiff worked at a restaurant remote from Fellini's offices, Fellini's owner Michael Nelson testified that he spent some time, often hours, in each Fellini's restaurant, including the Peachtree Road location, each and every day. As the Eleventh Circuit noted in *Allen*, "while the Court expresses no opinion on whether the evidence is strong enough to actually show that … the harassment was so pervasive as to provide [Defendant] with constructive knowledge of the harassment, the Court holds that the evidence is sufficient to create a genuine issue of material fact precluding summary judgment." *Allen*, 121 F.3d at 647–48.

Based on the foregoing, Plaintiff has presented sufficient evidence in support of her prima facie case under Title VII to survive summary judgment in this case on her claim of hostile environment sexual

harassment. Therefore, Defendant's Motion for Summary Judgment as to Count I of Plaintiff's Complaint is **DENIED**.[6]

### C. State Law Claims

Fellini's also seeks summary judgment with respect to Plaintiff's state law claims. Fellini's claims that it cannot be held liable for the intentional torts of its employees under Georgia law even if Plaintiff can show that they were committed and argues that Plaintiff has presented no evidence that could support her claim of negligent retention.

#### 1. Intentional Torts

In Counts II and III of her Complaint, Plaintiff alleges that Defendant Tenner committed assault and battery against her and that both Tenner and Yasko committed intentional infliction of emotional distress as a result of their harassing behavior. Plaintiff further contends that Fellini's is liable for this conduct because it knew or should have known that it was occurring. Fellini's argues that it cannot be held liable for the intentional torts of its employees.

 Fellini's is correct that an employer cannot be liable for the torts of its employees unless those torts were committed "within the scope of the actual transaction of the master's business for accomplishing the ends of his employment." *Simon v. Morehouse School of Medicine*, 908 F.Supp. 959, 972 (N.D.Ga. 1995) (quoting *Southern Bell Tel. & Tel. Co. v. Sharara*, 167 Ga.App. 665, 307 S.E.2d 129, 131 (1983)). Georgia courts have typically found that assault and sexually harassing conduct are personal acts taken outside the scope of employment. *Id.*

 However, Georgia law also provides that "an employer who possesses or who is possessed of knowledge of the employee's behavior ... [and] fails to correct such conduct ... essentially ratifies his employee's acts and may be held liable therefor." *Id.* (citations omitted). *See also, Mears v. Gulfstream Aerospace Corp.*, 225 Ga.App. 636, 484 S.E.2d 659, 665 (1997)("If the employer knows about the employee's conduct and responds inadequately, however, liability for intentional infliction of emotional distress may arise.").

 As set forth in detail above, Plaintiff has created disputed issues of fact as to whether Fellini's knew or should have known of the alleged conduct as it was happening and failed to take corrective action. Therefore, summary judgment with respect to Counts II and III of the Complaint is also inappropriate under Georgia law. *See Simon*, 908 F.Supp. at 972–73 (denying summary judgment on state law claims of assault and intentional infliction of emotional distress where plaintiff had presented facts from which a jury could find that her employer knew or should of known of the alleged conduct).

#### 2. Negligent Retention

Plaintiff claims in Count IV of the Complaint that Fellini's knew or should have known of the dangerous propensities of Tenner as a result of his employment at another Fellini's location and that Fellini's was negligent in retaining Tenner and transferring him to the Peachtree Road location where Plaintiff encountered him. Defendant claims that there is insufficient evidence to support Plaintiff's claim of negligent retention and that it is entitled to summary judgment as a matter of law.

---

**6.** Because Defendant concedes that Plaintiff has properly preserved her claim under Title VII, the Court need not address Defendant's argument regarding the relevance of conduct occurring prior to December 1996. Evidence of such conduct was not determinative of Defendant's motion and Defendant's argu-

ment about its use in the case does not entitle it to summary judgment even if correct. Similarly, inquiry into Defendant's claim that the $50,000 damages cap applies in this case is premature. Accordingly, any dispute regarding these issues may be resolved at the time of trial in this case.

■ For an employer to be liable for the negligent retention ·of an employee under Georgia law, "it would be necessary that the [employer] knew or should have known of those dangerous propensities alleged to have resulted in [plaintiff's] injuries." *Bunn–Penn v. Southern Regional Medical Corp.*, 227 Ga.App. 291, 488 S.E.2d 747, 750 (1997) (citations omitted). Fellini's has presented evidence that there was no problem with Tenner at the other Fellini's location that had any bearing on the sexual harassment of Plaintiff. Fellini's claims that Tenner suffered "burn-out" as a manager at the other location and that employees complained of his hard driving management style. The only evidence in the record to support Plaintiff's claim that Fellini's had any reason to know of Tenner's alleged propensity for sexually inappropriate behavior is her testimony that one of Fellini's managers told her that there had been a "problem" with Tenner at another location which Plaintiff "inferred" was of a sexual nature. While the manager in question admits making the statement, he claims to have no personal knowledge of any sexual problem and cannot remember anyone telling him of one.

■ Even assuming the truth of Plaintiff's evidence, it is insufficient to create a genuine issue of material fact with respect to Fellini's negligent retention of Tenner. In *Bunn–Penn*, the defendant hospital was admittedly aware of concerns that a male technician behaved inappropriately by remaining in female patients' rooms while they were undressing and in performing tasks of a delicate nature for female patients that were typically handled by female technicians. *Bunn–Penn*, 488 S.E.2d at 750. Accepting this knowledge as true, the court found that these concerns would not have been sufficient to put the defendant hospital on notice that the individual had the propensity to commit the sexual assault alleged by the victim. *Id.* Accordingly, the court granted summary judgment on the plaintiff's negligent retention claim.

Plaintiff's evidence of a single statement that there may have been some vague "problem" with Tenner previously is clearly insufficient to create a genuine issue of fact for the jury. Based upon this evidence, a reasonable jury could not conclude that Fellini's knew or should have known that Tenner had a propensity to engage in the sexually harassing conduct allegedly suffered by Plaintiff. *Bunn–Penn*, 488 S.E.2d at 750; *see also Alpharetta First United Methodist Church v. Stewart*, 221 Ga.App. 748, 472 S.E.2d 532, 536 (1996)(summary judgment affirmed for defendant on negligent retention claim where evidence presented by plaintiff did not tend to show that defendant knew or should have known that minister had the propensity for type of sexual misconduct alleged). Accordingly Defendant's Motion for Summary Judgment is **GRANTED** with respect to Count IV of Plaintiff's Complaint.

## III. CONCLUSION

Based upon the foregoing, the Magistrate Judge's recommendation is **REJECTED**, and Defendant's Motion for Summary Judgment [# 10–1] is **DENIED** as to Counts I, II and III of Plaintiff's Complaint and **GRANTED** as to Count IV. This matter is hereby **REMANDED** to the Magistrate Judge for further proceedings.