## A98A2352. HARPER v. CITY OF EAST POINT et al.
### (515 SE2d 623)

BEASLEY, Presiding Judge.

Michael Crook, a city police officer for East Point, sexually assaulted Tawana Harper when over her objection he locked her in the back of his patrol car, stroked her inner thigh, and masturbated in front of her.[1] Harper sued him, the City of East Point, and the

---

(487 SE2d 653) (1997); *Smith v. State*, 229 Ga. App. 765 (494 SE2d 757) (1997); *Smith v. State*, 232 Ga. App. 458 (501 SE2d 622) (1998).

[1] Crook pleaded guilty to two counts of simple battery (merged) and one count of public indecency with respect to this incident. The court fined him $7,500 with $125 in surcharges and imposed 12 months probation for simple battery and 12 months consecutive probation for public indecency, plus $20 per month for probation supervision. Forty hours of community service and counseling for sexual behavior were special conditions of probation. We note that restitution to the victim could have been ordered. OCGA § 17-14-3. This may have been the only achievable remedy against him for such a terrible ordeal at the hands of a public servant. The victim has medical expenses, not to mention the horror of the experience or the pain of memory. The legislature has "declared [it] to be the policy of this state that restitution to their victims by those found guilty of crimes is a primary concern of the criminal justice system." OCGA § 17-14-1. Judges have the power to carry out this policy, to implement it, and to assure that it is given meaning in the lives of victims of crime.

city's police chief. Because of a bankruptcy discharge, she dismissed the causes of action against Crook. As to the claim of negligent hiring and retention remaining against the city and its police chief (jointly referred to herein as the "City"), the court entered summary judgment in their favor. Harper appeals, claiming evidence shows the City had constructive knowledge of Crook's propensity to commit this act.

1. The City contends the statute of limitation had run prior to the filing of the complaint. It did not argue this point in its written summary judgment motion or brief or at the hearing but conceded that this was a renewal action under OCGA § 9-2-61.

Nothing in *Lau's Corp.* [*v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991)], places a burden on a plaintiff to respond to issues which are not raised in the motion for summary judgment or to present its entire case on all allegations in the complaint — even on issues not raised in the defendants' motion.[2]

Issues not argued in support of the motion for summary judgment will not be considered on appeal where plaintiff could have presented evidence to rebut them.[3] Had the City raised the statute of limitation in its motion, Harper would have had the opportunity to present evidence that this was a renewal action.

2. The City persuaded the trial court that Harper presented no evidence it had constructive knowledge of Crook's propensity to sexually assault another person. "An employer's liability for negligent hiring or retention of an employee requires proof that the employer knew or should have known of the employee's propensity to engage in the conduct which caused the plaintiff's injury."[4] Proof of such leaning must consist of evidence substantially related to the injury-causing conduct.[5] Lying about employment qualifications, for example, does not constitute evidence of violent tendencies.[6]

Harper presented evidence from which a jury could find that the City should have known that Crook was prone to committing a sexual assault. Construed in plaintiff's favor, the evidence shows that

---

[2] *Hodge v. SADA Enterprises*, 217 Ga. App. 688, 690 (1) (458 SE2d 876) (1995).

[3] *Maxwell v. Mayor &c. of Savannah*, 226 Ga. App. 705, 711 (4) (487 SE2d 478) (1997).

[4] (Footnote omitted.) *Grand Union Co. v. Miller*, 232 Ga. App. 857, 863 (6) (503 SE2d 49) (1998); *Kemp v. Rouse-Atlanta, Inc.*, 207 Ga. App. 876, 878 (1) (429 SE2d 264) (1993) (" '[a]n employer's liability for negligent hiring or retention of an employee requires proof that the employer knew or should have known of the employee's violent and criminal propensities' "), quoting *Odom v. Hubeny*, 179 Ga. App. 250, 252 (2) (345 SE2d 886) (1986).

[5] *Fortune v. Principal Financial Group*, 219 Ga. App. 367, 371-372 (1) (465 SE2d 698) (1995).

[6] Id.; *Edwards v. Robinson-Humphrey Co.*, 164 Ga. App. 876, 880 (298 SE2d 600) (1982).

prior to hiring Crook the City was aware he had pled guilty to making harassing phone calls to a female companion and had misrepresented in his employment application his relationship to that woman, hiding the incident. After Crook's hiring, a citizen's complaint about Crook resulted in an investigation that uncovered three sexually inappropriate encounters between Crook and female citizens.

In the first, Crook, while purporting to conduct an investigation, queried a woman in a parking lot. During the encounter he asked whether she was cold in her spandex shorts and leered at her body. Feeling "eerie," she walked away, only to have him follow her very slowly in his police car. He approached her again, asking her if she had seen a suspect, to which she replied she had not. She started walking homeward at a fast pace, and he again followed her in his car, staring. She took a back entrance to her apartment complex so he could no longer follow her.

About a month later (again while conducting an "investigation"), he asked a second woman in the same neighborhood whether she was wearing shorts under her nightgown, commented on her tan, inquired if she was married, and remarked that she needed a boyfriend to take care of her. She responded negatively to his inquiries. He called her to his car window and asked her a second time if she was sure she did not need a boyfriend. Later he came to her house to speak to her again when he suspected that she had complained of his conduct and that a formal investigation was underway. She did not pursue the matter further for fear of Crook.

The third woman spoke of an uncomfortable encounter occurring around the same time. While making official inquiries, Crook had tried to look around her door as she stood in her nightgown behind it.

Crook's conduct, as reported to the City, represented an increasingly aggressive progression of sexual deviancy. Beginning with a guilty plea on making harassing phone calls to a woman, the behavior escalated to asking intimate questions of female citizens, to following a woman in a police car, to repeatedly asking a female citizen if she needed a boyfriend, to trying to peer around a door at a woman in her nightgown — all the time while using his badge and the cover of official police investigation to try to cow these women into submission.

A jury could find that Crook's conduct gave warning to the City that his behavior reflected an escalating sexual deviancy likely to result eventually in the sexual assault of a female while he was on duty. Significantly, the female officer investigating the matter for the City reported to her superior that based on the standard sex crimes courses in which all officers are trained, she felt Crook's behavior was a "textbook case" of sexual deviancy and should be investigated fur-

ther. The male superior ignored the suggestion and simply told Crook not to repeat the behavior. No professional counseling, no reassignment to team him with another officer, no sanction to curb future behavior was imposed. Tragically for Harper, the one-time instruction was insufficient.

Unlike *Bunn-Penn v. Southern Regional Med. Corp.*,[7] prior to the Harper incident Crook did not merely exhibit voyeuristic tendencies. He acted upon those tendencies by harassing women and following one in his car.[8] Moreover, Crook was a police officer, a position that wields enormous power and intimidation over those vulnerable citizens an officer is sworn to protect. The City as his employer owed a higher duty to protect citizens from abuse of that power, a duty which private employers do not share. Under the Georgia Constitution, "[p]rotection to person and property is the paramount duty of government. . . ."[9] Even security employers are expected to exercise greater care in employment decisions.[10] Those responsible for clothing citizens with police power must be even more vigilant.

The court erred in granting summary judgment to the City of East Point on the negligent retention claim.

The negligent hiring claim against the City of East Point and Chief McLendon has no merit, for at the time of hiring the evidence of Crook's deviancy was, standing alone, insufficient to alert the employer of a potential sexual aggressor. The expert testimony of inadequate investigation was not submitted to the court before the summary judgment hearing, but was filed after the court entered its order. The court properly exercised its discretion to refuse to consider that evidence.[11] Summary judgment on the negligent hiring claim in favor of the City of East Point and Chief McLendon was proper.

3. Chief McLendon asserted official immunity as an additional defense.

The Georgia Tort Claims Act (the "Act") excludes from its waiver of sovereign [and official] immunity "losses resulting from . . . (t)he exercise or performance of or the failure to exercise or perform a discretionary function or duty on the part of a state officer or employee, whether or not the discretion involved is abused." OCGA § 50-21-24 (2).[12]

---

[7] 227 Ga. App. 291, 294 (2) (488 SE2d 747) (1997).

[8] See *Harvey Freeman & Sons v. Stanley*, 259 Ga. 233, 234 (2) (378 SE2d 857) (1989).

[9] Ga. Const. of 1983, Art. I, Sec. I, Par. II.

[10] *C. K. Security Systems v. Hartford Accident &c. Co.*, 137 Ga. App. 159, 161 (2) (223 SE2d 453) (1976).

[11] See *Myers v. Barnard*, 180 Ga. App. 192, 193 (348 SE2d 733) (1986) (affidavit filed after summary judgment order entered was properly not considered).

[12] *Rhoden v. Dept. of Pub. Safety*, 221 Ga. App. 844, 845 (1) (473 SE2d 537) (1996).

The Act contains a

> definition of discretionary function or duty: "a function or duty requiring a state officer or employee to exercise his or her policy judgment in choosing among alternate courses of action based upon a consideration of social, political, or economic factors." OCGA § 50-21-22 (2).[13]

Hiring, firing, and disciplining an individual as a police officer require the exercise of professional deliberation and judgment. Chief McLendon's actions in this matter were part of his discretionary governmental functions.[14] Because there was no evidence that Chief McLendon acted maliciously, wilfully, or corruptly, the court did not err in granting summary judgment to him on the negligent hiring and retention claims.[15]

*Judgment affirmed in part and reversed in part. Pope, P. J., and Ruffin, J., concur.*

DECIDED MARCH 30, 1999 — ▉▉▉▉▉▉▉▉

*Wayne B. Kendall*, for appellant.
*Hollberg, Weaver & Kytle, George M. Weaver*, for appellees.

---

[13] *Dept. of Transp. v. Brown*, 267 Ga. 6, 7 (1) (471 SE2d 849) (1996).

[14] See, e.g., *Bontwell v. Dept. of Corrections*, 226 Ga. App. 524, 527 (4) (a) (486 SE2d 917) (1997) (physical precedent only) ("the operation of a state or county correctional institute . . . including the degree of training and supervision to be provided over its officers, is a *discretionary* governmental function") (emphasis in original); *Holsey v. Hind*, 189 Ga. App. 656, 657 (1) (377 SE2d 200) (1988) ("[n]o one, for example, would seriously contend that a decision by a prosecutor on such a matter as hiring or firing a secretary would be anything other than administrative, although such a decision would obviously involve an exercise of judgment or discretion connected with the duties of his office").

[15] See *Parker v. Wynn*, 211 Ga. App. 78 (438 SE2d 147) (1993).