## A01A1204. WALTER CHAMPION COMPANY v. DODSON.
## A01A1205. DODSON v. WALTER CHAMPION COMPANY et al.
### (555 SE2d 519)

SMITH, Presiding Judge.

After an intentionally set fire destroyed the inventory and office furnishings of her business, Donna Dodson filed this action against several defendants, including Walter Champion, Jr., who was the owner of the warehouse in which she leased space, and one of the other two tenants of the building, Walter Champion Company (WCC). The case was tried to a jury, and the trial court granted a directed verdict to Champion on all claims and to WCC on all claims except Dodson's claim for negligent retention of an employee. The jury reached a verdict in Dodson's favor, awarding her damages of $60,000. Following the denial of WCC's motion for judgment notwithstanding the verdict and Dodson's motion for new trial, WCC and Dodson appeal. WCC contends that the trial court erred in denying its motion for directed verdict on the negligent retention claim and that the trial court's charge on negligent retention was erroneous. Dodson cross-appeals, arguing that the trial court erred in granting a directed verdict to Champion on all claims and that sufficient evidence was presented to permit the jury to consider all of her allegations against WCC.

In WCC's appeal, we reverse. We agree with WCC that the evidence presented at trial did not support any claim for negligent retention. In Dodson's appeal, we affirm in part and reverse in part. Although we cannot conclude that the record supports Dodson's remaining claims of liability against WCC, we conclude that the evidence raised issues of fact concerning Dodson's claim that Champion breached his duty to maintain the warehouse in a safe condition. We therefore affirm in part and reverse in part.

Dodson owned an industrial supply company and leased office space in a building owned by Champion. Champion owned WCC before selling it to Bob Ford, Jeff Ford, and Jay Clark in 1992. After the sale of the business, WCC also leased warehouse and office space from Champion. WCC subsequently allowed Dodson to store her inventory in a portion of the warehouse located behind her office. Dodson testified that WCC needed the space she was using as an office and, in exchange for her agreement to move her office to another part of the building, WCC allowed her to store her inventory in a portion of the warehouse. It is undisputed that Sherry Derryberry, a bookkeeper previously employed by Champion and retained by WCC, intentionally set fire to the building in an apparent effort to cover up her theft from the company.

Dodson filed this action against Champion and WCC, among others, claiming that by allowing her to store her inventory in the

warehouse, Champion and WCC assumed a duty to exercise ordinary care to keep the inventory safe. She alleged that this duty included an obligation to insure the inventory and equipment against loss. Whether WCC negligently retained Derryberry became another issue at trial.

1. In Case No. A01A1204, WCC argues that the trial court erred in denying its motion for directed verdict on the negligent retention claim. We agree.

To show that an employer was negligent in retaining an employee "with violent and criminal propensities," a plaintiff must show that the employer "knew or should have known of those dangerous propensities alleged to have resulted in [the plaintiff's] injuries." *Edwards v. Robinson-Humphrey Co.*, 164 Ga. App. 876, 880 (3) (298 SE2d 600) (1982). See also *Bunn-Penn v. Southern Regional Med. Corp.*, 227 Ga. App. 291, 294 (2) (488 SE2d 747) (1997).

Dodson contends that the owners of WCC knew about prior thefts committed by Derryberry while employed by Champion and that this knowledge rendered her violent act of setting fire to the building foreseeable. This theory fails on two grounds. First, the record does not show that the owners of WCC had knowledge that Derryberry had committed any thefts against the company. It is true that Champion testified that while in his employ, Derryberry had failed to pay back a loan he had made to her and that she attempted to steal some cash but was caught. Also, it is not disputed that he planned to terminate her when he sold the company to WCC but that the new owners "chose to keep her on." The record does not show, however, that the new owners knew about the attempted thefts before they purchased the company or that they otherwise had any knowledge before they chose to retain her that Derryberry had taken any money from the company. In fact, one owner testified that "we would trust [Derryberry] with our last dollar." We also note Dodson's testimony that she did not know at the time of the fire "that [Derryberry] had been a dishonest employee."

But even assuming, without deciding, that the new owners somehow may have had knowledge that Derryberry had attempted to steal money from the company before they retained her as an employee, we cannot agree that this knowledge made Derryberry's destruction of the building foreseeable and that this knowledge was the proximate cause of Dodson's damages. A plaintiff asserting a claim of negligent retention must show the employer's knowledge that an employee was likely to commit the *particular* tortious act that allegedly resulted in the plaintiff's damages: "An employer's liability for negligent hiring or retention of an employee requires proof that the employer knew or should have known of the employee's propensity to engage in the conduct which caused the plaintiff's injury.

Proof of such leaning must consist of evidence *substantially related to the injury-causing conduct*." (Punctuation and footnotes omitted; emphasis supplied.) *Harper v. City of East Point*, 237 Ga. App. 375, 376 (2) (515 SE2d 623) (1999).

Knowledge of prior attempted thefts of petty cash might have placed WCC on notice that Derryberry could be capable of further acts of dishonesty, but we cannot agree that these acts made Derryberry's act of violence against the company foreseeable. We note that the owners, as well as Dodson, testified that they had never seen Derryberry act violently or destructively. And although Champion testified concerning Derryberry's attempted thefts, he also testified that he had never seen her act in a way that would alert him that she might commit a violent act such as arson. Under these circumstances, we cannot conclude that the jury had any basis on which to determine that the fire was foreseeable. To hold that WCC was liable for the tortious acts of its employee simply because of knowledge that she attempted to steal petty cash would be the equivalent of a holding that the proximate causation requirement no longer exists in this state in negligent retention actions. See *Edwards*, supra at 880. The trial court erred in denying WCC's motion for directed verdict on this claim. In light of this conclusion, WCC's argument regarding the trial court's instructions is moot.

2. In Case No. A01A1205, Dodson contends that the trial court erred in directing a verdict to WCC on the remaining claims and to Champion on all claims.

(a) Dodson argues that she presented sufficient evidence that Champion was negligent in failing to provide adequate fire protection for the warehouse. In particular, she maintains that the warehouse did not have a sprinkler system or an adequate fire wall. But Dodson's claim of negligence based on Champion's failure to provide a sprinkler system was not viable, as it appears that she knew the warehouse did not contain such a system when she stored her inventory there. Even assuming, without deciding, that this condition constituted a defect, "one who is familiar with the premises cannot rely for recovery upon the negligence of the defendant in failing to correct a patent defect where such party had . . . equal knowledge of its existence." (Citations and punctuation omitted.) *Morris v. Barnet*, 191 Ga. App. 382, 383 (381 SE2d 597) (1989).

We reach a different conclusion, however, concerning Dodson's contention that the building did not contain an adequate fire wall between the offices — where the fire originated — and the warehouse area. Evidence was presented that these areas were separated only by an eight-inch block wall, which Champion referred to as a fire wall. The insurance adjuster who investigated the fire testified that, depending on several factors, a properly constructed fire wall would

prevent or minimize fire from spreading from one area to another. Evidence also was presented that the insured, WCC, was concerned that the wall did not contain the fire and that the wall contained several penetrations used for electrical and HVAC purposes.

Champion, as a landlord, was under the duty to maintain the warehouse in a safe condition. *Denise v. Cannon*, 219 Ga. App. 765, 766 (466 SE2d 885) (1995). "A landlord impliedly warrants that the rented premises are in good repair, and if by reason of a latent defect they are not, he is liable if he actually knew they were not in good repair or if by the exercise of ordinary care he could have discovered that they were not, if the defective condition is the proximate cause of the injury. [Cit.]" Id. Some evidence was presented that an adequate fire wall could have minimized the effects of a fire, and at least an inference was raised by the evidence that the alleged fire wall was inadequate for that purpose. Even though Derryberry started the fire, if an adequate fire wall could have eliminated or diminished Dodson's damages, Champion "may be liable to the extent determined by the jury." Id. at 767. A directed verdict is authorized "only where there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict." (Citation, punctuation and emphasis omitted.) *Armech Svc. Co. v. Rose Elec. Co.*, 192 Ga. App. 829, 831 (2) (386 SE2d 709) (1989). Because the record contains some evidence, although slight, in support of Dodson's negligence claim against Champion, we conclude that the trial court erroneously granted a directed verdict in Champion's favor.

(b) Although we conclude that Champion was not entitled to a directed verdict on Dodson's negligence claim, we agree with WCC that a directed verdict was authorized in its favor on this claim. Dodson argues that she presented evidence concerning the lack of a sprinkler system and the inadequate fire wall in the warehouse and that as "the occupier of the property, [WCC] had a duty to inspect the premises to discover these dangerous conditions." She correctly points out that when an occupier of land, by either express or implied invitation, induces another to come onto his premises for any lawful purpose, he is liable for damages for injuries caused by a failure to exercise ordinary care in keeping the premises safe. OCGA § 51-3-1. And the question of whether one is an "occupier of land" for the purpose of determining liability under this statute "depends on whether or not [the tenant] had control of the property, whether or not it has title thereto and whether or not it has a superior right to possession of property which is in the possession or control of another." (Citations and punctuation omitted.) *Ga. Bldg. Svcs. v. Perry*, 193 Ga. App. 288, 295 (4) (a) (387 SE2d 898) (1989). While the written lease agree-

ment between Champion and WCC was entered into evidence,[*] these factors were not placed in issue at trial so that a jury could determine, for example, whether WCC had title or superior possession of the warehouse. Furthermore, Dodson's argument ignores the obvious fact that she also was an "occupier," in a general sense, and WCC never acted as a landlord. She submitted no evidence that WCC, as a cotenant, was obligated to attempt to make structural alterations to the building in an attempt to provide more fire protection to her than it provided for itself. Under these circumstances, we simply cannot conclude that the trial court erred in refusing to submit Dodson's negligence claim against WCC to the jury.

*Judgment reversed in Case No. A01A1204. Judgment affirmed in part and reversed in part in Case No. A01A1205. Barnes and Phipps, JJ., concur.*

DECIDED OCTOBER 17, 2001.

*Drew, Eckl & Farnham, Paul W. Burke, Andrew C. Matteson,* for appellant.

*Horton, Maddox & Anderson, Michael A. Anderson,* for appellees.

---

[*] Dodson and Champion had only an oral lease, the terms of which addressed only rental amounts and the time space would become available.