S04A0470. MUNROE v. UNIVERSAL HEALTH SERVICES, INC.
(596 SE2d 604)

HUNSTEIN, Justice.

This case is before us after the Court of Appeals evenly divided over the negligent hiring/retention claim in the personal injury action brought by Christine Munroe against Universal Health Services, Inc. d/b/a Anchor Hospital Behavioral Health Systems.[1] Munroe alleged that shortly after she entered Universal's residential treatment facility as a patient, a mental health assistant named Shawn Love employed by Universal made inappropriate comments

---

[1] The case was transferred to this Court pursuant to Art. VI, Sec. V, Par. V, Const. of Ga. 1983.

to her; that he came to her room and made sexual advances which ended when Munroe's roommate interrupted him; and that he returned in the evening, administered medication to her that left her incapacitated and then raped her. The trial court granted summary judgment to Universal on the negligent hiring/retention claim after finding that Universal exercised ordinary care in the hiring process and that dishonest information in Love's employment application did not put Universal on notice that he had a propensity to commit sexual assaults. Although we disapprove the foreseeability standard employed by the trial court, we conclude under the correct standard that summary judgment on Munroe's negligent hiring/retention claim was proper.

1. An employer "is bound to exercise ordinary care in the selection of employees and not to retain them after knowledge of incompetency." OCGA § 34-7-20. See also Restatement (Second) of Agency, § 213 (person who conducts an activity through servants or other agents is "subject to liability for harm resulting from his conduct if he is negligent or reckless: . . . (b) in the employment of improper persons . . . in work involving risk of harm to others"). Thus, the appellate courts have recognized that an employer may be liable for hiring or retaining an employee the employer knows or in the course of ordinary care should have known was not suited for the particular employment.[2] E.g., *Harvey Freeman & Sons, Inc. v. Stanley*, 259 Ga. 233 (2) (378 SE2d 857) (1989); *Patterson v. Southeastern Newspapers*, 243 Ga. App. 241, 245 (533 SE2d 119) (2000).

When an incompetent employee is hired for a particular position, it is reasonably foreseeable that such employee may injure others in the negligent performance of the duties of that position and accordingly an employer may be held liable for injuries caused by the negligent performance of the incompetent employee where evidence shows the employer knew or should have discovered that incompetency. See, e.g., *Piney Grove Baptist Church v. Goss*, 255 Ga. App. 380 (2) (565 SE2d 569) (2002); *Georgia Electric Co. v. Smith*, 108 Ga. App. 851, 854 (1) (134 SE2d 840) (1964). However, absent a causal connection between the employee's particular incompetency for the job and the injury sustained by the plaintiff, the defendant employer is not liable to the plaintiff for hiring an employee with that particular incompetency. See *Kelley v. Baker Protective Svcs.*, 198 Ga. App. 378

---

[2] [W]hile the standard of ordinary care is invariable, [cit.], yet circumstances of the case may require a greater *amount* of care to meet the *degree* or standard of care required by law. [Cits.] *C. K. Security Systems v. Hartford Accident & Indem. Co.*, 137 Ga. App. 159, 161 (2) (223 SE2d 453) (1976). Unsuitability is thus properly determined with reference to the particular position involved. Accord *Ponticas v. K.M.S. Investments*, 331 NW2d 907 (2) (Minn. 1983).

(401 SE2d 585) (1991).

In *Henderson v. Nolting First Mortgage Corp.*, 184 Ga. 724, 737 (193 SE 347) (1937), a negligent retention case, this Court stated that

> in order that a party may be liable as for negligence, "it is not necessary that he should have contemplated or even be able to anticipate the particular consequences which ensued, or the precise injuries sustained by the plaintiff. It is sufficient if, by exercise of reasonable care, the defendant might have foreseen that some injury would result from his act or omission, or that consequences of a generally injurious nature might have been expected." [Cits.]

Id. at 737. Consonant with general tort principles, we clarified in *Harvey Freeman & Sons*, supra, that an employer may be held liable only where there is sufficient evidence to establish that the employer reasonably knew or should have known of an employee's "tendencies" to engage in certain behavior relevant to the injuries allegedly incurred by the plaintiff. Id. at 234 (2).

Pursuant to *Harvey Freeman & Sons* and *Henderson*, supra, we hold that a defendant employer has a duty to exercise ordinary care not to hire or retain an employee the employer knew or should have known posed a risk of harm to others where it is reasonably foreseeable from the employee's "tendencies" or propensities that the employee could cause the type of harm sustained by the plaintiff. "The employer is subject to liability only for such harm as is within the risk." Restatement (Second) of Agency, § 213 Comment (d). Thus, we reject Munroe's "but for" argument that Universal is liable for the negligent hiring or retention of Love solely because his employment by Universal provided Love with the access or opportunity to injure her. Rather, the relevant question is whether Universal knew or in the exercise of ordinary care should have known that Love, the employee it hired and retained to perform duties involving personal contact with medicated, vulnerable patients, was unsuitable for that position because he posed a reasonably foreseeable risk of personal harm to patients like Munroe. Similarly, we disapprove contrary language in those opinions relied upon by Universal for the proposition that to prevail on a negligent hiring/retention claim, a plaintiff must show the defendant employer knew or should have known of an employee's propensity to commit the tortious or criminal act that caused the plaintiff's injury. See, e.g., *Walter Champion Co. v. Dodson*, 252 Ga. App. 62 (1) (555 SE2d 519) (2001); *Harper v. City of East Point*, 237 Ga. App. 375 (2) (515 SE2d 623) (1999); *Edwards v. Robinson-Humphrey Co.*, 164 Ga. App. 876 (3) (298 SE2d 600) (1982).

"Such a restrictive and inflexible approach does not square with common sense or tort law, and represents a significant departure from precedent of this Court. [Cits.]" *Sturbridge Partners v. Walker*, 267 Ga. 785, 786 (482 SE2d 339) (1997) (rejecting a similarly narrow approach to foreseeability in premises liability cases).[3] See *Harvey Freeman & Sons* and *Henderson*, supra.

2. "The trial court can conclude as a matter of law that the facts do or do not show negligence on the part of the defendant or the plaintiff only where the evidence is plain, palpable and undisputable. [Cit.]" *Robinson v. Kroger Co.*, 268 Ga. 735, 739 (493 SE2d 403) (1997). By granting summary judgment to Universal, the trial court concluded as a matter of law that the evidence was sufficient to demand a finding that Universal had exercised due care in hiring Love and that no question of material fact remained for a jury. In support of the trial court's ruling, Universal points to evidence that it used a private investigation company called ChoicePoint to investigate Love's background[4] and that after conducting a seven-year criminal record search on Love in the two counties where Love indicated he had lived and worked, ChoicePoint reported that "no record [was] found" in either county.

"To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law." *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). "On appeal from the grant of summary judgment this Court conducts a de

---

[3] Although this Court adopted a "substantially similar" foreseeability standard in *Sturbridge Partners*, the policy reasons for that higher standard in premises liability cases have no application to negligent hiring/retention cases. Unlike a premises owner who has no control over the condition of surrounding properties or the illegal behavior of unknown assailants who come onto its property at different times and injure invitees there, an employer has exclusive control over which specific individual gets hired for the job and thus has control over the access and opportunity that job may provide that individual to harm potential plaintiffs.

[4] We recognize that criminal background checks of employees are statutorily-mandated only in certain industries. See, e.g., OCGA § 49-5-60 et seq. (requiring employee records checks for day-care centers and other child-caring institutions). However, while there may be no statutory requirement that employers in other businesses conduct background or criminal checks on potential employees, we reject the position that employers who fail to conduct such searches can never be found liable for negligent hiring because of this failure. Whether or not an employer's investigative efforts were sufficient to fulfill its duty of ordinary care is dependent upon the unique facts of each case. See *Tecumseh Products Co. v. Rigdon*, 250 Ga. App. 739 (1) (552 SE2d 910) (2001). Thus, while investigation of an employee's past may not be necessary when filling the position of parking lot attendant, see *Worstell Parking v. Aisida*, 212 Ga. App. 605 (2) (442 SE2d 469) (1994), a jury may find that employers who fill positions in more sensitive businesses without performing an affirmative background or criminal search on job applicants have failed to exercise ordinary care in hiring suitable employees, even absent a statutory duty to conduct such background searches.

novo review of the evidence to determine whether there is a genuine issue of material fact and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. [Cits.]" *Youngblood v. Gwinnett Rockdale &c. Svc. Bd.*, 273 Ga. 715, 717 (4) (545 SE2d 875) (2001). Construing the evidence in favor of Munroe, our review of the record reveals that Universal received information from ChoicePoint prior to the sexual assault on Munroe that the high school where Love allegedly graduated could not locate any enrollment records for him for the years 1979 and 1980;[5] that Love had misrepresented to his own benefit the reason why he had been fired by a previous employer;[6] and that ChoicePoint had been unable to confirm the existence of two prior employers listed by Love or any details of Love's alleged employment at these businesses, one of which had operated the facility where Love gained the personal care experience Universal considered critical to his employment as a mental health assistant.[7] As to Universal's own actions, the evidence shows that the persons with whom Love should have interviewed prior to employment could not remember interviewing him and that the Universal employee in charge of hiring did not obtain the independent confirmation she felt was needed regarding Love's job at the bankrupt employer before Love began working at Universal. Nor does it appear that anyone at Universal required Love to explain the mistakes found in his application form.

Applying the principles set forth in Division 1, supra, we conclude that although the trial court erred by requiring Munroe to establish that Universal knew or should of known of Love's propensity to commit sexual assaults, it did not err by granting summary judgment to Universal on Munroe's negligent hiring/retention claim. It is uncontroverted that Universal contracted with ChoicePoint, a professional investigation service, to perform a background check on Love; that at the time it hired Love, Universal had no reason to question the accuracy or thoroughness of the information provided by ChoicePoint; and that ChoicePoint's investigation positively reflected that Love had no convictions for any crimes or any record of criminal activity. ChoicePoint's investigation did reveal problems, namely, the

---

[5] The high school's search was limited to the years 1979 and 1980 apparently based on Love's birth year of "1961." Although the copy of Love's driver's license he provided Universal shows that he was born in 1969, his handwritten answer on the "background investigation questionnaire" seems to indicate a birth year of 1961.

[6] Love indicated he had been "layed off" whereas the employer's records reflected that he had been terminated and was "not eligible for rehire due to poor attendance."

[7] As to this particular employer Universal had been told by Love on his application that the employer had gone bankrupt. The other employer was a landscaping business in Washington State.

inaccurate or incomplete employment and education information in Love's application, but there is no question of fact that these problems did not involve any accusations of criminal activities or violent behavior or any other indication that Love posed any risk of personal harm to others. Accordingly, the evidence uncontrovertedly establishes that Universal did not "disregard[ ] indications of [a propensity to inflict physical harm] which ought to arouse suspicion and investigation." *Merchants Nat. Bank of Savannah v. Guilmartin*, 88 Ga. 797, 799 (15 SE 831) (1892). Thus, while the inaccurate or incomplete information provided by Love may have rendered him an unsuitable employee for reasons unrelated to Munroe's injuries, no fact question remains as to Munroe's negligence claim that Universal did not breach its duty to exercise ordinary care to avoid hiring an employee who posed a reasonably foreseeable risk of inflicting personal harm on others.

Issues of negligence, including failure to exercise ordinary care and the foreseeability of criminal behavior, are not ordinarily susceptible of summary adjudication. *Sturbridge Partners*, supra, 267 Ga. at 786. However, because the evidence here is plain, palpable and undisputable that Universal is not liable to Munroe under a negligent hiring/retention theory for the injuries she sustained because of Love's attack, we affirm the trial court's grant of summary judgment to Universal.

3. We have resolved the issue that evenly divided the Court of Appeals. Because no division on that court was indicated regarding the trial court's rulings on other claims by Munroe, we accordingly return this case to that court for resolution of those issues.

*Judgment affirmed in part and case returned in part to the Court of Appeals. All the Justices concur.*

DECIDED MAY 24, 2004.

*Hertz, Link & Smith, Eric J. Hertz, Mark D. Link, Houston D. Smith III*, for appellant.

*Nall & Miller, Michael D. Hostetter, Adriane C. Yelton Sammons, Christine M. Stadler, Pennebaker & Zamora, Omar R. Mark Zamora*, for appellee.