[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

**FILED**

**U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
September 28, 2005
THOMAS  K. KAHN
CLERK**

No. 05-12388
Non-Argument Calendar

D. C. Docket No. 03-03056-CV-WBH-1

MARVELENE HERRON,
GRIFFIN E. HOWELL, III,
as Trustee-in-Bankruptcy for the Estate of Donna
Marie Hann-McCoy,

Plaintiffs-Appellants,

versus

DEREK MORTON,
CARDINAL HEALTH 103, INC.,

Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of Georgia

**(September 28, 2005)**

Before BLACK, HULL and PRYOR, Circuit Judges.

PER CURIAM:

Marvelene Herron and Donna Marie Hann-McCoy (collectively "the plaintiffs"),[1] former employees of Cardinal Health 103, Inc. ("Cardinal Health"), appeal the district court's order granting summary judgment in favor of Cardinal Health and Derek Morton, their supervisor (collectively "the defendants"), in plaintiffs' state law claim for negligent hiring, retention, and supervision of Morton.[2] Specifically, the plaintiffs allege that the district erred in determining that they had not shown that Cardinal Health was negligent in hiring Morton, who served as plaintiffs' non-direct supervisor, because of Morton's propensity to engage in sexual harassment. After review, we affirm.

## I. BACKGROUND

In February 2001, Cardinal Health acquired Bindley-Western Drug Company ("Bindley-Western"). As a result of the acquisition, Cardinal Health extended offers of employment to all pre-existing Bindley-Western employees. Morton was a pre-existing Bindley-Western employee.

---

[1]Griffin E. Howell, III, was named as a party instead of Hann-McCoy because Howell was trustee of Hann-McCoy's bankruptcy estate. However, because this case actually involves Hann-McCoy, we refer to her as plaintiff instead of Howell.

[2] In the district court, the plaintiffs also presented claims of hostile work environment, pursuant to Title VII, and state law claims of assault, battery, intentional infliction of emotional distress, and invasion of privacy. Because none of these claims is raised on appeal, they are abandoned. Greenbriar, Ltd. v. City of Alabaster, 881 F.2d 1570, 1573 n.6 (11th Cir. 1989). Thus, we will consider only the plaintiffs' state law claim for negligent hiring, retention, and supervision, which the district court considered under its supplemental jurisdiction, see 28 U.S.C. § 1367(a).

In June 2001, Cardinal Health hired plaintiffs Herron and Hann-McCoy as warehouse associates on the night shift.

In March 2002, Morton was transferred from the Austell, Georgia location to the McDonough, Georgia location, and was given the position of night shift operations manager. As night shift operations manager, Morton was in charge of oversight for the night shift, including processing orders and ensuring orders were quality-controlled and shipped. Although there were mid-level managers who directly supervised Herron and Hann-McCoy, ultimate supervisory responsibility fell to Morton.

In approximately March 2002, a female employee in the Knoxville, Tennessee facility complained to Matt Porter ("Porter"), a former director of operations, after she attended a training session with Morton. She told Porter that Morton made her uncomfortable and she did not like the way Morton looked at her.

In April or May 2002, five women complained to Lisa Ellis ("Ellis"), the McDonough facility's human resources manager, that the way Morton looked at them made them uncomfortable. One of the women complained about rude comments Morton made about her hair and another woman complained about a rude personal comment Morton made. Morton was orally counseled. Thereafter, Ellis met formally with all five women and then checked in with each of the

3

women weekly. Throughout this time, all five women indicated that Morton's behavior had improved.

In October 2002, plaintiff Hann-McCoy complained to Porter that Morton made her uncomfortable by staring at her, putting his arm around her, and using Viagra as an example in meetings when talking about pharmaceutical inventory. Hann-McCoy met with Ellis about Morton's behavior. Ellis spoke with Hann-McCoy regularly throughout November 2002. Hann-McCoy transferred to the day shift on November 18, 2002, and never reported any further inappropriate behavior by Morton.[3]

In February 2003, Ellis met with plaintiff Herron about a disciplinary matter. During the meeting, Herron told Ellis that she bought Morton a pair of tennis shoes as a gift. The gift was a favor because Morton had helped Herron's son-in-law get a job. Herron also alleged that in March 2002, Morton moved his tongue back and forth while she and three co-workers were eating in the break room. Herron further alleged that Morton massaged her shoulders once and asked her if she could get him a hotel room next to hers during her vacation to Disney World. Cardinal Health interviewed Morton, who stated that he purchased the

---

[3]In November 2002, plaintiff Hann-McCoy went on paid leave and then later on Family and Medical Leave Act ("FMLA") leave. On May 29, 2003, Cardinal Health terminated Hann-McCoy's employment when she failed to return to work after her leave expired.

4

shoes from Herron and that they were not a gift given in exchange for hiring her son-in-law. He also denied discussing Herron's vacation plans.

In February or March 2003, Cardinal Health received Morton's personnel file from Bindley-Western. After reviewing the file, Cardinal Health learned that a female employee had complained that Morton had hit her on the thigh in the break room and asked her if she would have a better attitude that day. Bindley-Western had investigated the allegations and interviewed Morton. Morton stated that he had made physical contact with the co-worker by tapping her knee. Bindley-Western had counseled Morton, although the record is unclear as to whether Bindley-Western counseled Morton about sexual harassment specifically. According to Ellis, Morton was told that he should avoid physical contact with employees while communicating with them.

The magistrate judge recommended that the district court grant summary judgment in favor of the defendants on the plaintiffs' negligent hiring, retention, and supervision claims. Specifically, the magistrate judge determined that "these incidents, while perhaps suggesting bothersome tendencies, do not reflect Morton's potential harm alleged by [the plaintiffs]. That is they showed no evidence that Morton had a tendency to sexually harass women, much less that he had a tendency to sexually harass women in the workplace." (Internal quotation

marks omitted).  The district court agreed with the magistrate judge, and granted summary judgment in favor of the defendants.[4]

## II. DISCUSSION

Because this appeal involves only state law claims, we first review the relevant Georgia law.  Under Georgia law, "[t]he employer is bound to exercise ordinary care in the selection of employees and not to retain them after knowledge of incompetency . . . ."  O.C.G.A. § 34-7-20.  Both this Court and the Georgia Supreme Court have held that liability for negligent hiring or retention requires evidence that the employer knew or reasonably should have known of the employee's propensity to engage in the type of conduct that caused the plaintiff's injury.  Middlebrooks v. Hillcrest Foods, Inc., 256 F.3d 1241, 1247 (11th Cir. 2001); Munroe v. Universal Health Servs., Inc., 596 S.E.2d 604, 606 (Ga. 2004).  Thus, to prevail on their state law claims, the plaintiffs had to produce evidence that the defendants knew or reasonably should have known Morton was engaging in sexual harassment.  Furthermore, in order to prevail, plaintiffs must show not only that Cardinal Health should have known of Morton's sexual harassment, but also that it "was foreseeable that [Morton] would engage in sexual harassment of a

---

[4]We review "de novo the district court's grant of summary judgment, applying the same legal standards as the district court, and viewing all facts and reasonable inferences drawn therefrom in the light most favorable to . . . the non-moving party."  Johnson v. Booker T. Washington Broadcasting Service, Inc., 234 F.3d 501, 507 (11th Cir. 2000).

fellow employee [if] he was continued in his employment." Coleman v. Housing

Authority of Americus, 381 S.E.2d 303, 307 (Ga. Ct. App. 1989) (quotation

omitted).[5]

In addition, in order for conduct to rise to the level of sexual harassment, the

conduct must include "sexual advances, requests for sexual favors, or conduct of a

sexual nature," and "[i]nnocuous statements or conduct, or boorish ones that do

not relate to the sex of the actor or of the offended party (the plaintiff), are not

counted." Gupta v. Florida Bd. of Regents, 212 F.3d 571, 583 (11th Cir. 2000)

(quotation and alteration omitted). Further, "[s]howing that harassing conduct is

severe or pervasive requires more than an employee's subjective belief that the

harassment meets such standards; it also requires an objective analysis by the court

to determine if such a perception is reasonable." Liebno v. Drexel Chemical Co.,

586 S.E.2d 67, 70 (Ga. Ct. App. 2003).

Plaintiffs allege that Cardinal Health knew Morton had the propensity to

sexually harass female employees based on three incidents: (1) a female employee

alleged that Morton hit her on the thigh and asked her if she would have a better

---

[5]See also Wynn v. Paragon Sys., Inc., 301 F. Supp.2d 1343, 1355 (S.D. Ga. 2004) (citing Georgia law and stating that "a plaintiff may recover in tort from an employer for negligent retention of an employee if the employer knew or should have known that the employee was engaging in sexual harassment"); Fowler v. Sunrise Carpet Indus., Inc., 911 F. Supp. 1560, 1585 (N.D. Ga. 1996) (citing Georgia law and stating that "if an ordinarily careful employer, acting upon information furnished to it, reasonably could have discovered that its supervisor was sexually harassing its employees, the employer could be found to have negligently retained the supervisor").

7

attitude that day; (2) he was accused of staring at a female employee during a training session in Knoxville, Tennessee; and (3) five employees complained to Cardinal Health that Morton stared at them in a manner that made them feel uncomfortable. The problem for the plaintiffs is that none of this prior conduct by Morton rises to the level of sexual harassment.

With respect to the female employee's complaint that Morton hit her on the thigh, this Court and the Georgia courts have held that such behavior does not constitute sexual harassment. See Gupta, 212 F.3d at 578-79, 586 (not sexual harassment when supervisor put his hand on plaintiff's thigh); Liebno, 586 S.E.2d at 69 (supervisor's actions, including putting his arm around plaintiff's shoulders, trying to kiss plaintiff, and grabbing plaintiff's right buttock, did not rise to the level of sexual harassment). Moreover, there is no evidence in the record that the gesture was sexual in nature. Thus, regardless of when Cardinal Health received Morton's personnel file from Bindley-Western, the file did not provide notice of Morton's propensity to engage in sexual harassment.

As to the complaints of the five female employees and the employee in Knoxville, Tennessee that Morton stared at them, this Court has held that such behavior also does not constitute sexual harassment. See Gupta, 212 F.3d at 578-79, 586 (looking a female employee "up and down" does not constitute sexual

harassment); see also Liebno, 586 S.E.2d at 69. Moreover, there is no indication that the alleged staring incidents were sexual in nature. Thus, regardless of when Cardinal Health received the complaints from the female employees, those complaints did not provide notice of Morton's propensity to engage in sexual harassment.

In short, we conclude that none of the incidents complained of constitutes sexual harassment and thus they did not put Cardinal Health on notice of Morton's propensity to engage in sexual harassment.[6]

### III. CONCLUSION

Viewing the facts in a light most favorable to the plaintiffs, and upon careful review of the record and the parties' briefs, we find no reversible error.

**AFFIRMED.**

---

[6]The plaintiffs rely on several cases to support their argument that Cardinal Health negligently retained Morton. However, the cases cited by plaintiffs involve employees whose previous behavior constituted sexual harassment. See BCB Co., Inc. v. Troutman, 409 S.E.2d 218, 219-20 (Ga. Ct. App. 1991) ("supervisor had sexually harassed [previous employee] in much the same way as he did [plaintiff]"); Cox v. Brazo, 303 S.E.2d 71, 73 (Ga. Ct. App. 1983) (record showed that supervisor made sexual advances, dropped his pants, and touched plaintiff's body parts and that he had previously engaged in "similar behavior toward other female employees"). Thus, those cases are distinguishable from the instant case.