[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPT 17, 2008
THOMAS K. KAHN
CLERK

_____

No. 08-12694
Non-Argument Calendar

_____

D. C. Docket No. 06-00098-CV-CDL-3

CSX TRANSPORTATION, INC.,

Plaintiff-Appellant,

versus

PYRAMID STONE INDUSTRIES, INC.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

**(September 17, 2008)**

Before CARNES, BARKETT and WILSON, Circuit Judges.

PER CURIAM:

CSX Transportation, Inc. (CSXT), appeals the district court's entry of

summary judgment in favor of Pyramid Stone Industries, Inc. On appeal, CSXT argues that its negligent hiring, retention, training and supervision claims should have survived summary judgment and that, consequently, summary judgment was not appropriate for its punitive damages claim. For the reasons set forth below, we affirm.

## BACKGROUND

On November 24, 2005, a northbound CSXT train derailed at a rural railroad crossing in Elberton, Georgia because of track damage. CSXT had closed the crossing two months earlier. The accident caused CSXT over $700,000 of property damage.

Pyramid Stone is owned and operated by James Michael Rutherford and runs a quarry a short distance from where the derailment occurred. William Dean Bowman is a Pyramid Stone employee and rents a trailer home from Rutherford directly across the street from the quarry. Bowman keeps an eye on the quarry gate during non-working hours to make sure it is kept closed. Pyramid Stone hired Bowman in 2003 as a ledge hand. By 2005, Bowman's work included doing "basically anything" Rutherford needed him to do. When Bowman works after hours, he drives himself home in the Pyramid Stone golf cart.

The quarry was closed on the day of the accident, but Bowman noticed the

gate was open, so he drove the golf cart through the quarry to make sure all was well. After closing the quarry gate, he drove the golf cart back to the trailer home. Shortly thereafter, deer hunters stopped by Bowman's home and offered him a deer that they had left at their hunting camp. Bowman drove the golf cart to pick up the deer, but he ran the cart into a ditch on his way back before reaching the railroad tracks. He decided to get the front-end loader from the quarry so that he could move the golf cart back onto Pyramid Stone's property. Bowman drove the front-end loader across the railroad tracks, picked up the golf cart, and returned to the quarry, again crossing the tracks. He stated that he did not notice any damage to the tracks when he drove over them. Shortly thereafter, the CSXT train derailed.

CSXT sued Pyramid Stone and Bowman alleging, among other things, negligent hiring, retention, training and supervision. The district court granted Pyramid Stone's motion for summary judgment, and CSXT appealed.

## STANDARD OF REVIEW

We review a district court's grant of summary judgment *de novo*, viewing the evidence and all factual inferences in the light most favorable to the nonmoving party. *Sharp v. Fisher*, 532 F.3d 1180, 1182-83 (11th Cir. 2008) (per curiam).

## DISCUSSION

A. Bowman's Suitability for Work at the Quarry

3

CSXT first argues that Pyramid Stone breached its duty of ordinary care in hiring, retaining, training and supervising Bowman because it knew or should have known that Bowman was not suited for employment at the quarry.  Rutherford knew that Bowman had a criminal history, and could have easily inquired as to the full extent and specific nature of that criminal history.  CSXT asserts that Bowman's criminal history shows his "dangerous propensities to disobey rules, take things that do not belong to him, and trespass onto other people's property and damage their property."  Thus, CSXT contends that a reasonable jury could find that Pyramid Stone breached its duty of ordinary care in hiring, retaining, training and supervising Bowman.

"The appropriate standard of care in a negligent hiring/retention action is whether the employer knew *or should have known* the employee was not suited for the particular employment." *W. Indus., Inc. v. Poole*, 634 S.E.2d 118, 121 (Ga. Ct. App. 2006).  The suitability question is properly determined in reference to the particular job involved. *Munroe v. Universal Health Servs.*, 596 S.E.2d 604, 606 n.2 (Ga. 2004) (internal quotation marks omitted).  Pyramid Stone hired Bowman as a ledge hand, and Bowman eventually took on varied tasks around the quarry.  CSXT argues that, because of Bowman's alleged "dangerous propensities," he was not suited to work with the dangerous equipment in the quarry.  By CSXT's

4

reasoning, however, it would be negligent for any employer whose work includes dangerous machinery to hire an employee who has a history of violence or irresponsibility. Bowman had prior experience, moreover, working with heavy, dangerous equipment similar to the machines he used at the quarry, and none of his past criminal conduct occurred during his prior work with such equipment. Thus, we fail to see how a reasonable jury could find that Bowman's criminal history rendered him unsuitable for quarry work, especially considering that his prior experience indicated that he was specifically suited for the job.

B. Foreseeability of the Accident in Light of Bowman's Criminal History

CSXT next argues that a jury could find that CSXT's damages were reasonably foreseeable in light of Bowman's dangerous propensities. Specifically, CSXT asserts that Bowman's irresponsibility for others' property suggests that it is reasonably foreseeable that allowing him to use quarry equipment would cause damage to another's property, as it did here. In support of its argument, CSXT notes that, because it had closed the railroad crossing, Bowman's conduct in driving the front-end loader over the tracks was technically criminal. *See* O.C.G.A. § 16-7-21 (prohibiting knowing and unauthorized entry upon another's land).

"The causation element requires showing that, given the employee's . . .

5

propensities, the victim's injuries should have been foreseen as the natural and probable consequence of hiring [or retaining] the employee." *TGM Ashley Lakes, Inc. v. Jennings*, 590 S.E.2d 807, 813 (Ga. Ct. App. 2003). In other words, was it "reasonably foreseeable from the employee's 'tendencies' or propensities that the employee could cause the type of harm sustained by the plaintiff." *Munroe*, 596 S.E. 2d at 606.

We cannot say that, given Bowman's criminal history, it was natural and probable that Bowman would trespass on another's property using quarry equipment. Viewing the facts in the light most favorable to CSXT, the damage to the tracks was accidental, resulting from, at worst, a lapse in judgment. Thus, we agree with the district court that CSXT failed to present sufficient evidence to warrant submission of its claims to a jury.

C. Punitive Damages

A punitive damages claim only has efficacy alongside a valid claim for actual damages. *Barnes v. White County Bank*, 318 S.E.2d 74, 75-76 (Ga. Ct. App. 1984). Therefore, because we conclude that the district court did not err in entering summary judgment for Pyramid Stone, CSXT's punitive damages claim fails. Accordingly, we affirm.

**AFFIRMED.**