**THIRD DIVISION**
**DOYLE, P. J.,**
**REESE, J., and SENIOR APPELLATE JUDGE PHIPPS**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**October 25, 2022**

# In the Court of Appeals of Georgia

A22A1116. MORRIS v. REAL ESTATE EXPERT ADVISORS, LLC et al.

A22A1117. REAL ESTATE EXPERT ADVISORS, LCC et al. v. MORRIS.

DOYLE, Presiding Judge.

These cases arise from an action filed by professional photographer Whitney Morris against Real Estate Expert Advisors, LLC ("REEA"), real estate broker Tracy Cousineau, and homeowner Belinda Brooks, seeking damages for injuries Morris sustained when he was shot by Brooks as he attempted to photograph the interior of her house. The trial court granted summary judgment to REEA and Cousineau, and Morris appeals in Case No. A22A1116, arguing that the defendants owed a duty to Morris and the trial court erred by concluding that there is no genuine issue of fact supporting vicarious liability on the part of REEA and Cousineau for the conduct of

Sherri Wilson, a real estate agent working for REEA. In Case No. A22A1117, Cousineau and REEA filed a conditional cross-appeal, arguing that the trial court erred to the extent that it held that they owed a duty to Morris to prevent the shooting by third-party Brooks and their conduct was the proximate cause of Morris's injuries. For the reasons that follow, we affirm the grant of summary judgment to Cousineau in her personal capacity, we vacate the grant of summary judgment to REEA on the ground of lack of vicarious liability, and we remand for further proceedings.

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.[1]

The relevant factual background was summarized in the initial appearance of this case in our Court in *Morris v. Real Estate Expert Advisors*[2] ("*Morris I*"), following an earlier grant of summary judgment to REEA and Cousineau:

---

[1] (Citation omitted.) *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

[2] 355 Ga. App. 286 (844 SE2d 227) (2020).

Viewed in the light most favorable to Morris (i.e., the nonmoving party), the record shows that Brooks hired REEA to sell her Winston, Georgia home. Cousineau, a real estate agent [and broker], is the owner and manager of REEA. REEA told Brooks that when it was time for her home to be photographed, she would be contacted to set up an appointment; but that did not happen.

REEA hired Advantage Home Tours to photograph Brooks's home for her real-estate listing and submitted a work order to the Advantage Homes website. Thereafter, an Advantage Homes employee corresponded with a REEA employee [listing coordinator Sarah Grillo] to schedule a photography appointment. Advantage Homes confirmed that Brooks's home would be photographed at 9:00 a.m. on February 2, 2018. In turn, Advantage Homes scheduled Morris, a freelance real-estate photographer, for the job.

According to Morris, when he photographs a home, the way he enters the house depends "first and foremost" on the instructions in his work order. These work orders ask real-estate agents to submit all pertinent information to Advantage Homes Tours, and the company then passes that information along to the photographer. And according to Morris, if the instructions say to call the homeowner, knock on the door, or ring the doorbell, he follows those instructions. So, generally, the work order tells Morris everything that he needs to know for a photo shoot.

Here, REEA placed an electronic lockbox on the door to Brooks's home, and the box contained a key to the house. This type of lockbox is accessible via an electronic key or cell-phone application, which allows the real-estate agent to remotely control who accesses the home and when. The work order for Brooks's home included the code to her lockbox, but did not include any instructions to call the homeowner or agent before entering or any instructions related to a security alarm.

Morris arrived at Brooks's home just before 9:00 a.m. and took photographs of the house's exterior. He looked through the windows of the home and believed it appeared staged but unoccupied by an inhabitant. Then, shortly before 9:00 a.m., Morris used the application on his phone to open the lockbox. And at 9:00 a.m. sharp, he retrieved the key and opened the front door. But as the door swung open, a security alarm began to sound loudly. Surprised, Morris immediately looked back in the lockbox for a piece of paper with the security code. He found nothing inside. Morris then entered the home to look for the keypad and any paper containing the security code, but shortly thereafter he was shot from behind by Brooks.

[Based on an explicit reassurance made by her real estate agent, Wilson,] Brooks expected that [Wilson] would notify her before a photographer came to her home, but that never happened. So, when Morris entered the home, Brooks believed that he was an intruder, retrieved her firearm, and fired in his direction. She missed Morris the first time; but shot again, striking him in the buttocks and causing serious injuries.

Morris later filed suit against Brooks, REEA, and Cousineau, alleging that Cousineau and REEA "had a duty to act as a reasonable person would under the circumstances" and "take reasonable and ordinary steps to ensure Morris would be safe at Brooks's home." The complaint further alleged that REEA and Cousineau breached their duty of care by failing to inform Brooks that Morris would enter her home at approximately 9:00 a.m. on the date in question.[3]

Various procedural disputes ensued, but eventually REEA and Cousineau filed their first motion for summary judgment, arguing that: Cousineau herself was not involved in the real estate listing for Brooks's house, so she could not be held liable; and REEA and Cousineau owed no duty to Morris nor did they proximately cause the shooting.[4] The trial court granted summary judgment to REEA and Cousineau based on their discovery admissions that they owed no duty to Morris, and they did not cause the shooting. This Court reversed because the defendants' admissions are not binding on a nonmoving plaintiff on summary judgment.[5]

On remittitur, additional discovery ensued, and Cousineau and REEA again moved for summary judgment, arguing that they owed no duty to Morris and did not

[3] (Citations and punctuation omitted.) Id. at 286-287.

[4] See id. at 287-288.

[5] See id. at 296 (1).

proximately cause the shooting. Following a hearing, the trial court granted summary judgment to REEA and Cousineau, explaining as follows:

> Wilson is the only person who undertook to render the service of notifying Brooks prior to a photographer visit. . . . Defendants R[E]EA and Tracy Cousineau pointed to an absence of evidence on file to support a finding that Ms. Wilson was their employee [such that they would be vicariously liable for Wilson's conduct]; and Plaintiff did not point to evidence to create an issue of fact concerning whether Ms. Wilson was an independent contractor. Accordingly, Defendants have shown that no genuine issue of fact exists for the t[r]ier of fact on [Morris's] vicarious liability claims against R[E]EA or Tracy Cousineau.

Morris now appeals the ruling as to the lack of vicarious liability on the part of REEA and Cousineau, who conditionally cross-appeal, arguing a lack of duty and proximate causation.

1. *Vicarious liability ruling.* Morris contends that the trial court erred by granting summary judgment to Cousineau and REEA on the ground that Morris failed to point to evidence creating a factual question as to vicarious liability on the part of Cousineau and REEA for the conduct of Wilson. Based on the procedural posture in the trial court, we agree in part.

6

(a) *Cousineau's personal liability.* As a starting point, we note that the complaint, as amended, alleges three counts of negligence: one count against Cousineau, one count against REEA, and one against Brooks (who was not a party to the summary judgment order or this appeal). With respect to Cousineau individually, the complaint alleges that she failed to notify Brooks when the photographer would be coming, that she failed to notify Morris that he needed to call Brooks before arriving, that she negligently hired/trained/supervised the REEA staff, and that she failed to create or enforce policies that would prevent unannounced appointments. But as noted by the trial court, it is undisputed that Cousineau did not personally participate in the listing and communication process for the Brooks's home, so the record fails to create a factual issue as to her personal liability in handling the communications with Brooks. With respect to any other theory of Cousineau's individual liability as a result of her status as the brokerage's member and manager, there is neither evidence nor argument that the corporate form should be disregarded. Further, corporate officers are not personally liable for acts they themselves did not participate in,[6] nor for inadequate training or policies created on

_____

[6] See *Beasley v. A Better Gas Co.*, 269 Ga. App. 426, 429 (2) (604 SE2d 202) (2004) ("The general rule is that an officer of a corporation who takes part in the commission of a tort by the corporation is personally liable therefor, and an officer

7

behal of the corporation.[7] Thus, pretermitting any argument regarding respondeat superior, which Morris contends was an improper ground relied upon by the trial court, the record supports the trial court's grant of summary judgment to Cousineau in her individual capacity.

---

of a corporation who takes no part in the commission of a tort committed by the corporation is not personally liable unless he specifically directed the particular act to be done or participated or co-operated therein.") (punctuation omitted). See also *Baja Properties, LLC v. Mattera*, 345 Ga. App. 101, 105 (2) (812 SE2d 358) (2018) (summary judgment was appropriate as to lack of personal liability of members of limited liability corporation based on the absence of evidence that the members took part in the commission of a tort); *Fields Bros. Gen. Contractors, Inc. v. Ruecksties*, 288 Ga. App. 674, 677 (2) (655 SE2d 282) (2007) ("Generally, one who merely occupies the capacity of a corporate officer cannot be held to be vicariously liable for such damages as would otherwise be recoverable from his corporate principal," noting the potential for individual officer liability when the officer personally participates in the tort) (punctuation omitted).

[7] See *Beasley*, 269 Ga. App. at 430 (2) ("Although an injured party may sustain a claim *against a corporation* for negligently training an employee, . . . we have found [no authority] for the proposition that a corporate officer responsible for training procedures may be held liable for an injury to a third party arising out of an alleged failure by the officer to properly train a corporate employee.") (citation omitted; emphasis in original). See also *Munroe v. Universal Health Svcs.*, 277 Ga. 861, 863 (1) (596 SE2d 604) (2004) ("[A]n employer may be held liable [for negligent hiring or retention of an employee] *only where there is sufficient evidence to establish that the employer reasonably knew or should have known of an employee's tendencies to engage in certain behavior* relevant to the injuries allegedly incurred by the plaintiff.") (citation omitted; emphasis supplied).

(b) *REEA's vicarious liability*. With respect to REEA, the complaint similarly alleges that REEA was responsible for notifying Brooks about the timing of the photography appointment or telling Morris to contact Brooks or otherwise ensure that he had permission to enter the home at the appointed time. It further alleges that REEA negligently trained or hired employees, and it had a duty to create and enforce policies regarding communications with clients about third-party appointments. In opposition, REEA moved for summary judgment on the ground that it owed no duty to Morris; it did not raise the issue of lack of vicarious liability.[8]

Despite this, the trial court ruled that the claims were based on REEA's vicarious liability and "REEA [sucessfully] pointed to a lack of evidence on file to create an issue of fact concerning whether Sherri Wilson was its employee, rather than an independent contractor." But as a procedural matter, ruling on this question was improper because REEA had not raised it.[9] At the hearing on the summary

---

[8] The motion also asserted that Morris failed to reasonably care for his own safety.

[9] The summary judgment motion explicitly argued against Cousineau's personal liability based on the theory discussed above without any reliance on vicarious liability principles. With respect to Morris's alleged lack of care for his own safety, the trial court separately denied summary judgment on that question, and no appeal is made on that issue here.

9

judgment motion, the parties did not argue about the existence of vicarious liability, and in their reply brief in support of their summary judgment motion, REEA and Cousineau clarified:

> Plaintiff's argument[10] that [listing agent] Sherri Wilson and [listing coordinator] Sarah Grillo are employees of REEA and that as a result, any alleged negligence imputes to Defendant REEA under a theory of respondeat superior is not relevant to any issue raised on summary judgment. Accordingly, that argument is not addressed herein as it is immaterial to the current legal issues raised to the Court for the purposes of summary judgment.

Based on this procedural posture and the arguments and evidence presented to the trial court, it erred by ruling that Morris, as the nonmoving party, had a burden to create an issue of fact as to REEA's vicarious liability for its alleged employee's negligence.[11] Further, addressing this issue on appeal is not appropriate because if,

---

[10] This "argument" was Morris's assertion that REEA and Cousineau had admitted in a supplemental discovery response that listing agent Wilson and listing coordinator Grillo were employees based on an exhibit attached to Morris's summary judgment response. The page of the exhibit referenced in that assertion does not appear in the record, but a separate discovery response listing Wilson and Grillo as "employees" does appear in the record. At no point did the parties engage in a substantive argument over the elements of vicarious liability in this context.

[11] At the summary judgment hearing, the parties did not offer substantive argument about the fact-intensive elements relevant to determining the existence of

hypothetically, we were to resolve it adversely to REEA, we would make the law of the case on that issue even though REEA never attempted to meet its summary judgment burden on that issue in the trial court. Therefore, "because the trial court erred in sua sponte granting summary judgment on this ground," we vacate the trial court's grant of summary judgment on this ground to REEA.[12]

2. Turning to the cross-appeal by Cousineau and REEA, they challenge the trial court's ruling to the extent that it was predicated on (a) a potential breach of a duty owed to Morris under the theory of a negligent undertaking,[13] and (b) proximate

---

vicarious liability for employees versus independent contractors, such as agency or controlling the time, manner, and method of work, nor does the trial court's order reflect such an analysis. See generally *Cajun Contractors v. Peachtree Property Sub, LLC*, 360 Ga. App. 390, 394 (1) (a) (861 SE2d 222) (2021) (outlining and analyzing the factors relevant to vicarious liability). Also, the order does not address the fact that REEA admitted in discovery responses that Wilson, Grillo, and Cousineau were "individuals employed by [REEA]" at the time of the shooting, and "all employees of [REEA]" could be contacted through REEA's counsel.

[12] *Gatto v. City of Statesboro*, 353 Ga. App. 178, 187 (4) (834 SE2d 623) (2019).

[13] See generally Restatement (Second) of Torts § 324A ("One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if (a) his failure to exercise reasonable care increases the risk of such harm, or (b) he has undertaken to perform a duty owed by the other to the third person, or (c) the harm is suffered because of reliance of the

causation. But as noted above, rather than ruling on these questions, the trial court's order was predicated on the lack of vicarious liability — its discussion of the existence of a duty was a hypothetical one that it did not resolve. "[T]his is a Court for the correction of errors of law, and if the trial court has not ruled on an issue . . . there is nothing for this Court to review upon appeal."[14] Accordingly, we remand for proceedings consistent with this opinion.

*Judgment affirmed in part and vacated in part in Case No. A22A1116. Case remanded in Case No. A22A1117. Reese, J., and Senior Appellate Judge Herbert E. Phipps concur.*

---

other or the third person upon the undertaking."). See also *Huggins v. Aetna Cas. & Sur. Co.*, 245 Ga. 248, 249 (264 SE2d 191) (1980) (adopting Section 324A in Georgia).

[14] (Punctuation omitted.) *Pneumo Abex, LLC v. Long*, 357 Ga. App. 17, 29 (2) (849 SE2d 746) (2020).