**NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.**

In the Supreme Court of Georgia

Decided: December 19, 2023

S23A1095.  WILSON et al. v. INTHACHAK et al.

WARREN, Justice.

The Georgia Constitution directs our Court of Appeals to transfer cases to this Court "[i]n the event of an equal division of the judges."  Ga. Const. of 1983, Art. VI, Sec. V, Par. V.  In this case, the Court of Appeals equally divided on an issue and transferred the case to this Court.  We conclude that although the Court of Appeals was equally divided on that one issue within the case, the court was not equally divided on the disposition of the judgment that was appealed.  Under our precedent, this case does not fall within our equal division jurisdiction, and we return the case to the Court of Appeals.

1. (a) *Factual and Procedural Background*

In January 2018, Dorothy Warren, a patient in the emergency room at Clinch Memorial Hospital, died after Dr. Nirandr Inthachak, working in his office in a different county, allegedly negligently misinterpreted her CT scan. Angela Wilson, Warren's daughter, sued Dr. Inthachak.

The trial court granted Dr. Inthachak summary judgment on two bases. First, the trial court held that Wilson had shown "no clear and convincing evidence of gross negligence," and that her claim thus failed under OCGA § 51-1-29.5, which requires a plaintiff in "an action involving a healthcare liability claim arising out of the provision of emergency medical care" to prove "gross negligence" by "clear and convincing evidence."[1] The court concluded that OCGA § 51-1-29.5 applied to Wilson's claim—even though Dr. Inthachak

---

[1] OCGA § 51-1-29.5 (c) says in full: "In an action involving a health care liability claim arising out of the provision of emergency medical care in a hospital emergency department or obstetrical unit or in a surgical suite immediately following the evaluation or treatment of a patient in a hospital emergency department, no physician or health care provider shall be held liable unless it is proven by clear and convincing evidence that the physician or health care provider's actions showed gross negligence."

2

was not physically present in the emergency room—because Dr. Inthachak "interpret[ed] the CT [scan] from the emergency department and fax[ed] his interpretation to the emergency department" where Warren was being treated, and Warren was "emergent," meaning she needed "emergency medical care."[2] Second, the trial court granted summary judgment in favor of Dr. Inthachak based on causation, concluding that Wilson had not shown that "the outcome would have been different" had Dr. Inthachak provided an allegedly correct interpretation of Warren's CT scan.

---

[2] Specifically, the trial court found that "no jury issue exists as to whether the patient was emergent under OCGA § 51-1-29.5 [(a)] (5)." OCGA § 51-1-29.5 (a) (5) says:

"Emergency medical care" means bona fide emergency services provided after the onset of a medical or traumatic condition manifesting itself by acute symptoms of sufficient severity, including severe pain, such that the absence of immediate medical attention could reasonably be expected to result in placing the patient's health in serious jeopardy, serious impairment to bodily functions, or serious dysfunction of any bodily organ or part. The term does not include medical care or treatment that occurs after the patient is stabilized and is capable of receiving medical treatment as a nonemergency patient or care that is unrelated to the original medical emergency.

3

(b) *The Court of Appeals Opinions*[3]

Wilson appealed, and all 14 voting members of the Court of Appeals concluded that the trial court's grant of summary judgment was improper on both OCGA § 51-1-29.5 and causation grounds. As to the first ground, the Court of Appeals divided evenly (7 to 7) on the question of why summary judgment was improper based on OCGA § 51-1-29.5. On one side of the ledger, the putative majority agreed with the trial court that OCGA § 51-1-29.5 could apply in this case even though Dr. Inthachak was not in the emergency room, but then disagreed with the trial court's conclusion that OCGA § 51-1-29.5 must be applied at the summary judgment stage here and concluded that summary judgment based on OCGA § 51-1-29.5 was improper because a fact question existed as to whether Warren was in need of "emergency medical care." On the other side of the ledger,

---

[3] Because the Court of Appeals transferred the case as equally divided, the proposed opinions from the Court of Appeals are not published. Although one opinion was styled as the "majority opinion," and one was styled as the "dissent," neither opinion was joined by a majority of the judges. Following the labels given by the Court of Appeals, we thus refer to them as the putative majority and putative dissent.

4

the putative dissent concluded that summary judgment based on OCGA § 51-1-29.5 was improper because the statute cannot be applied in this case where "Dr. Inthachak examined the CT scans in the relative quiet of his office," rather than in an emergency room.

As to the second ground on which the trial court granted summary judgment, all 14 judges of the Court of Appeals—all 7 in the putative majority and all 7 in the putative dissent—agreed that the trial court erred by concluding that no factual question existed as to causation. Based on the above analysis, the putative majority concluded that the trial court's order granting summary judgment should be vacated and the case remanded, and the putative dissent concluded that the trial court's order should be reversed.

The Court of Appeals then transferred the case to this Court, citing our equal-division jurisdiction under Article VI, Section V, Paragraph V of the Georgia Constitution. After careful consideration of the text of the Georgia Constitution, our case law interpreting the Georgia Constitution, and the briefing and argument from the parties, we conclude that we do not have equal-

5

division jurisdiction over this case and we return the case to the Court of Appeals.

2. Georgia's Constitution says about the Court of Appeals: "In the event of an equal division of the Judges when sitting as a body, the case shall be immediately transmitted to the Supreme Court." Ga. Const. of 1983, Art. VI, Sec. V, Par. V.[4] Citing this constitutional

---

[4] The language directing that the Court of Appeals should transfer equally divided cases to this Court has remained largely unchanged since it was introduced in the Georgia Constitution of 1945. See Ga. Const. of 1945, Art. VI, Sec. II, Par. VIII ("In the event of an equal division of Judges on any case when the Court is sitting as a body, the case shall be immediately transferred to the Supreme Court."); Ga. Const. of 1976, Art. VI, Sec. II, Par. VIII ("In the event of an equal division of judges on any case when the Court is sitting as a body, the case shall be immediately transferred to the Supreme Court."). See also *Elliott v. State*, 305 Ga. 179, 184 (824 SE2d 265) (2019) (explaining "the presumption that the framers of a new constitution are not only aware of the provisions of the earlier constitution, but when [they] adopt provisions contained in a former Constitution, to which a certain construction has been given, [they] are presumed as a general rule to have intended that these provisions should have the meaning attributed to them under the earlier instrument.") (punctuation and citation omitted).

However, the Georgia Constitutions of 1945 and 1976 contained an additional provision that expressly granted this Court jurisdiction over equally divided cases. See Ga. Const. of 1945, Art. VI, Sec. II, Par. IV ("The Supreme Court *shall also have jurisdiction of and shall decide* cases transferred to it by the Court of Appeals because of an equal division between the Judges of that Court when sitting as a body for the determination of cases.") (emphasis supplied); Ga. Const. of 1976, Art. VI, Sec. II, Par. IV ("The Supreme Court *shall also have jurisdiction of and shall decide* cases transferred to it by the Court of Appeals because of an equal division between the judges of that Court when sitting as a body for the determination of cases.") (emphasis supplied).

6

provision or its predecessors, the Court of Appeals has transferred, and this Court has decided, many cases in which the Court of Appeals was equally divided as to whether the judgment being appealed should be affirmed or reversed. See, e.g., *Mitchell v. State*, 205 Ga. 532, 532 (54 SE2d 395) (1949) (explaining that the case was transferred from the Court of Appeals because the judges "were equally divided, [three judges] being of the opinion that the judgment complained of should be affirmed, and [three judges] being of the opinion that it should be reversed"); *Atlanta Newspapers, Inc. v. Grimes*, 216 Ga. 74, 75 (114 SE2d 421) (1960) ("This case comes to this court because there was an equal division of the Judges of the

---

See also *Mitchell v. State*, 205 Ga. 532, 532 (54 SE2d 395) (1949) ("Under article 6, section 2, paragraph 4, of the constitution of 1945, . . . the Supreme Court is now required to take jurisdiction of the case and decide the questions presented by the writ of error because the Court of Appeals was unable to render judgment since the judges of that court, while sitting as a body for the determination of cases, were equally divided[.]"). Text that expressly grants this Court jurisdiction over equally-divided cases does not appear in the 1983 Constitution. This Court has not addressed whether the absence of such text in the 1983 Constitution limits this Court's equal-division jurisdiction. We need not decide the issue here, however, because we conclude that, based on our precedent interpreting the 1983 Constitution, as well as our precedent interpreting the 1945 Constitution—with its more direct language requiring this Court to take jurisdiction and decide equally divided cases—we do not have equal division jurisdiction over this case.

7

Court of Appeals as to the judgment that should be rendered, [three judges] being for affirmance, and [three judges] being for reversal."); *Ford Motor Co. v. Conley*, 294 Ga. 530, 536 & n.5 (757 SE2d 20) (2014) (explaining that the Court of Appeals transferred the case because it "divided equally on the disposition of the appeal," with "[f]ive judges vot[ing] to reverse the trial court's judgment, and a total of five judges vot[ing] to affirm").

But here we do not have an equal division between judges voting to affirm or reverse the appealed judgment. Instead, all 14 judges agreed that the trial court's grant of summary judgment should not be affirmed on either ground given by the trial court for summary judgment. What they disagreed about was why summary judgment was not proper on one of those grounds and whether to "vacate" or to "reverse" the trial court's judgment. So the question we must answer is whether this type of disagreement invokes our equal-division jurisdiction.

(a) Rodriguez *and Related Cases*

8

This Court has never been confronted with precisely this situation before, but our recent discussion about our equal-division jurisdiction in *Rodriguez v. State,* 295 Ga. 362 (761 SE2d 19) (2014), is instructive. In that case, Rodriguez appealed the trial court's denial of her motion to suppress. *Rodriguez*, 295 Ga. at 362. The Court of Appeals equally divided on whether the trial court's judgment should be set aside—"six judges of the Court of Appeals were of the opinion that the denial of the motion to suppress should be affirmed, and six were of the opinion that it should not," id. at 364-365—but did not transfer the case to this Court. When Rodriguez petitioned for certiorari, this Court held that the Court of Appeals should have transferred the case because it invoked our equal-division jurisdiction: "[W]hen the full bench of the Court of Appeals has considered every claim of error that might cause the judgment of the trial court to be set aside, and when the full bench is equally divided about whether that judgment must be set aside, there is an 'equal division,' and the case must be transferred to this Court." Id. at 364.

Notably, the six Court of Appeals judges voting against affirming the denial of the motion to suppress disagreed on why and on whether the judgment should be reversed as opposed to vacated: "four were of the opinion that the denial should be reversed entirely, one was of the opinion that it should be vacated and remanded for further proceedings on the motion, and one did not say whether she would reverse or vacate, nor did she say what should happen next in the trial court, only that she dissented from the decision to affirm." Id. at 365. However, *Rodriguez* explained that "for purposes of the Equal Division clause, differences of opinion in this case about whether the judgment of the trial court should be set aside as 'reversed' or instead as 'vacated' are not dispositive," id. at 365, and treated the judges voting to reverse the judgment being appealed and the judges voting to vacate the judgment being appealed as votes on the same side of the judgment.[5] *Rodriguez*

---

[5] We emphasize that our treatment of votes for reversal and votes for vacatur as on the same side of the judgment was necessary to the holding in *Rodriguez* that the Court of Appeals should have transferred the case. If we had not concluded that reversal and vacatur were on the same side of the

likewise explained that "differences of opinion in this case among the six dissenting judges about what ought to happen next in the trial court [are not] dispositive" for purposes of the Equal Division clause. Id.[6]

In support of this analysis, we cited in *Rodriguez* three of our precedents in which this Court held that our equal-division jurisdiction was not invoked when the question on which the Court of Appeals was equally divided was not necessarily dispositive to the outcome of the judgment being appealed: *Atlantic Coast Line R. Co.*

---

judgment, the vote in the Court of Appeals would have been 6-5-1 or 6-4-2 (depending on how the vote that merely dissented was counted), and there would have been no equal division.

[6] The Court of Appeals followed *Rodriguez* in *S-D RIRA, LLC v. Outback Prop. Owners' Assn*, 330 Ga. App. 442 (765 SE2d 498) (2014), explaining:
> Here, although the majority and the special concurrence received six votes each, the whole court agreed on all issues other than what rule should be applied to determine the running of the statute of limitation. The whole court further agreed, however, that factual questions existed as to when the statute began to run and whether it should be tolled for any period of time. Both the majority and the special concurrence, therefore, concluded that the statute of limitation issue should be remanded to the trial court. Thus, because there was no division as to how the case should be disposed of, the case was not subject to automatic transfer to the Supreme Court of Georgia under the equal division rule.

Id. at 468 n.24 (on motion for reconsideration).

11

*v. Godard*, 211 Ga. 41 (83 SE2d 591) (1954); *Atlantic Coast Line R. Co. v. Clinard*, 211 Ga. 340 (86 SE2d 1) (1955); and *Ford v. Uniroyal Goodrich Tire Co.*, 270 Ga. 730 (514 SE2d 201) (1999). See *Rodriguez*, 295 Ga. at 364.

In the first of those cases, *Godard*, this Court returned to the Court of Appeals a case that had been transferred under the 1945 Georgia Constitution, reasoning that although the judges of that court were equally divided on whether the trial court's denial of a new trial should be affirmed or denied based on "whether the evidence authorized the verdict," the court had not made "any determination" on other potentially dispositive grounds raised in the appeal. 211 Ga. at 42. We explained that "if, upon consideration it should be determined there were erroneous rulings requiring the grant of a new trial, there would be no necessity to pass on the general grounds of the motion for new trial." Id. Thus, this Court held that "the case as it now stands is not subject to be transferred to this court." Id.

In the second case, *Clinard*, which was also decided under the 1945 Georgia Constitution, this Court returned a case to the Court of Appeals under similar circumstances, explaining that because the judges of the Court of Appeals were "not equally divided in the case at bar on all questions presented by the writ of error which would either require an affirmance or a reversal of the judgments excepted to, but only as to one of the questions in the case, it necessarily follows that the Supreme Court is without jurisdiction of the case." 211 Ga. at 343.

Finally, in *Ford*, this Court explained that the Court of Appeals was not required to transfer the case to this Court under the 1983 Constitution where a majority of the Court of Appeals judges had voted to reverse the judgment being appealed on one ground but had equally divided as to whether another issue was also a ground for reversal. See 270 Ga. at 731 n.4 ("Because the Court of Appeals was not equally divided on *all* questions presented, it was not required that the case be transmitted to this Court for resolution of the

13

joinder issue under [the Equal Division clause].") (emphasis in original).[7]

---

[7] There are a few cases in which this Court has assumed jurisdiction under the 1983 Georgia Constitution—without explaining why—over a single, potentially (but not clearly) dispositive question on which judges on the Court of Appeals were equally divided, answered that question, and then remanded to the Court of Appeals to answer remaining questions. See *Garland v. State*, 263 Ga. 495 (435 SE2d 431) (1993); *Metro. Atlanta Rapid Transit Auth. v. Leibowitz*, 264 Ga. 486, 487 (448 SE2d 435) (1994); *Clark v. State*, 284 Ga. 354, 356 (667 SE2d 37) (2008). Notably, although *Garland* appears inconsistent with *Clinard*, it cited *Clinard* for the proposition that this Court should remand for the Court of Appeals to decide the remaining questions; *Leibowitz* then cited *Garland*, and *Clark* cited *Leibowitz*. The issue presented in this case—whether we have equal-division jurisdiction to decide a case when all judges on the Court of Appeals agreed that the judgment being appealed could not stand—was not at issue in those cases, but to the extent that language in those cases could be read to suggest that the Court of Appeals does not need to be divided on the disposition of the judgment being appealed before this Court has equal division jurisdiction, we disapprove such a reading.

Two other cases applying the 1983 Georgia Constitution—*Munroe v. Universal Health Servs., Inc.*, 277 Ga. 861 (605 SE2d 928) (2004), and *Hoffman v. Wells*, 260 Ga. 588 (397 SE2d 696) (1990)—present a similar situation to *Garland, Clark,* and *Leibowitz*, insofar as this Court retained a case that was transferred by the Court of Appeals based on equal division on a single issue in a multiple-issue case. We note, however, that in *Munroe* and *Hoffman*, the single issue was dispositive as to one of the judgments being appealed, and the remaining issues concerned other appealed judgments. See *Munroe*, 277 Ga. at 865 (addressing the equally divided issue of whether summary judgment on the plaintiff's negligent hiring/retention claim should be affirmed and remanding to the Court of Appeals to consider "the trial court's rulings on other claims by Munroe"); *Munroe v. Universal Health Services, Inc.*, 270 Ga. App. 320, 320-321 (605 SE2d 928) (2004) (addressing, on remand, the grant of summary judgment on the plaintiff's respondeat superior claim and rejecting the plaintiff's premises liability claim raised for the first time on appeal); *Hoffman*, 260 Ga. at 588-590 & n.1 (explaining that the Court of Appeals was equally divided on whether the doctor should be granted a new trial on the

(b) *Applying* Rodriguez

Examining the division between the judges in the Court of Appeals presented in this case in light of *Rodriguez*[8] and the discussion above of this Court's precedents construing our equally-divided jurisdiction, we conclude that we do not have jurisdiction in this case under Article VI, Section V, Paragraph V of the Georgia Constitution of 1983. Here, the judgment being appealed was the grant of summary judgment to Dr. Inthachak. Given that all of the judges of the Court of Appeals voted to either vacate or reverse the grant of summary judgment, they all agreed that the grant of summary judgment could not stand on either ground the trial court provided, and that it therefore must be set aside. They disagreed

issue of the compensatory damages awarded against him, and addressing the other issues in the case affecting whether judgments granting the hospital compensatory damages, the doctor and hospital punitive damages, and the plaintiff attorney fees should be affirmed). These cases may be distinguishable from *Garland* and its progeny in this way. In any event, they do not control our decision in this case, and we need not decide if this Court correctly exercised jurisdiction in them.

[8] No party has questioned, let alone asked us to reconsider, the correctness of our reasoning in *Rodriguez* or in our precedents upon which *Rodriguez* relied.

15

only about *why* one of the two grounds was faulty. This disagreement affects only "what ought to happen next in the trial court," *not* "whether [the trial court's] judgment must be set aside." See *Rodriguez*, 295 Ga. at 365.[9] And the difference in the Court of Appeals's putative judgment line between vacating and reversing does not convince us that a jurisdiction-invoking equal division exists. To the contrary, *Rodriguez* indicates that this division—that is, of 7 judges voting to vacate and 7 judges voting to reverse the trial court's order—is in fact no division at all for purposes of Article VI, Section V, Paragraph V.[10]

---

[9] Specifically, the disagreement affects whether on remand, when the case goes to the jury, the trial court instructs the jury that it can apply OCGA § 51-1-29.5 if it determines that Warren was in need of "emergency medical care," or whether the court does not instruct the jury that it may apply OCGA § 51-1-29.5 because Dr. Inthachak was not in the emergency room.

The disagreement does not affect what happens to the appealed judgment. If the Court of Appeals had not transferred the case to this Court and instead issued its proposed opinion, the case would have gone back to the trial court to continue proceedings, and the trial court would not have been permitted to enter summary judgment on either of the two grounds it relied on in the summary judgment order that was appealed.

[10] The dissenting opinion asserts that our conclusion today is inconsistent with this Court's "explanation of the Equal Division Provision's purpose of ensuring that trial judges know what they are to do on remand," and cites for this general proposition language in footnote 5 in *Rodriguez*

16

Accordingly, we conclude that this case does not invoke our jurisdiction under Article VI, Section V, Paragraph V of the Georgia Constitution of 1983, and we return it to the Court of Appeals.

*Case returned to the Court of Appeals. All the Justices concur, except Boggs, C.J., Peterson, P.J., and Bethel and LaGrua, JJ., who dissent.*

---

stating that the constitutional provision prevents a trial judge from being put in the "untenable position" of not knowing "whether the motion to suppress still stood denied." See Dissenting Op. 7 (quoting *Rodriguez*, 295 Ga. at 365 n.5). However, this language, like the rest of *Rodriguez*, focused on the specific outcome of the motion to suppress in that case—the judgment being appealed. And footnote 5 in *Rodriguez* also says: "any appellate decision must be clear at the very least about whether *the judgment from which the appeal was taken* still stands or instead has been set aside." 295 Ga. at 365 n.5 (emphasis added). Nothing in *Rodriguez* indicates that the Court viewed our equal-division jurisdiction as being triggered any time the Court of Appeals is divided on an issue "that must necessarily be reached, and on which the trial court must take action on remand." Dissenting Op. 6.

And here, as explained in footnote 9 above, the trial court is not left in an "untenable position" as to the judgment appealed, but instead knows that on remand it cannot grant summary judgment on the two grounds it relied on in the order that was appealed.

17

MCMILLIAN, Justice, concurring.

Although I concur fully in the Court's decision concluding that this case does not fall within our equal division jurisdiction, I write separately to state that I would have retained jurisdiction over this case by exercising "our longstanding and almost-unlimited *certiorari* jurisdiction." *State v. Murray*, 286 Ga. 258, 266 (2) (b) (687 SE2d 790) (2009) (Nahmias, J., dissenting) (emphasis in original). See Ga. Const. Art. VI, Sec. VI, Par. V ("The Supreme Court may review by certiorari cases in the Court of Appeals which are of gravity or great public importance."). The issue on which the Court of Appeals divided – whether OCGA § 51-1-29.5 (c) applies to a physician who provides services while not physically within the hospital emergency department – is one of gravity and great public importance. However, I fully expect that upon return of the case to the Court of Appeals, review by the judges now currently sitting on that court, and issuance of an opinion, the losing party will seek *certiorari* review, at which time this Court will have another opportunity to decide this very important issue.

18

PETERSON, Presiding Justice, dissenting.

The majority holds that the Court of Appeals was not equally divided (and thus we must return this case to that court) even though half of the judges would hold that the trial court must give a particular jury instruction on remand, while the other half would hold that the trial court must not give that instruction. The majority reaches this conclusion based on a reading of our caselaw that yields a rule that, for the Court of Appeals to be equally divided under the Georgia Constitution's direction that such cases be transferred to us, the division must be about whether the trial court's judgment must be set aside. I agree with the majority's assessment of which of our precedents are relevant to this question. But I read those precedents to yield a different rule: the Court of Appeals is equally divided at least when there is an even division on an issue that (1) cannot be avoided and (2) on which the confusing lack of direction the even division[11] affords puts the trial court in an untenable position on

_____

[11] To avoid confusion, I use "even" division to refer to a split of opinion in which the Court of Appeals has the same number of judges on opposite sides of

19

remand. Because the issue on which the Court of Appeals was evenly divided here meets both criteria, I would hold that this case is an equal division case within the meaning of the Georgia Constitution. Accordingly, I respectfully dissent.

The provision of the Georgia Constitution that we apply today first appeared in the Constitution of 1945 and was carried forward into the Constitution of 1976 and then into our current Constitution of 1983. Although the language changed from 1976 to 1983 (and perhaps in material ways, as the majority flags), the language that is relevant to the issue the majority decides has remained materially identical throughout each of the constitutions: "an equal division of the Judges when sitting as a body…" Ga. Const. of 1983, Art. VI, Sec. V, Par. V (the "Equal Division Provision"); accord Ga. Const. of 1976, Art. VI, Sec. II, Par. IV ("an equal division between the judges of that Court when sitting as a body…"); Ga. Const. of 1945, Art. VI, Sec. II, Par. IV ("an equal division between the Judges of that Court

---

an issue (whether or not qualifying for transfer to this Court under the Constitution), and "equal" division to refer only to that subset of "even" division cases that qualify for transfer.

when sitting as a body…"). Accordingly, precedent on what constitutes an equal division under the predecessor provisions may inform the meaning of the current provision on that point. See *Elliott v. State*, 305 Ga. 179, 184-87 (II) (B) (824 SE2d 265) (2019).

The majority relies on four of our precedents, two of which precede the adoption of the Constitution of 1983. The two pre-1983 cases both apply the same rule: a case in which the judges of the Court of Appeals are evenly divided on an issue does not constitute "an equal division" if other issues remain undecided and a decision on those issues might make reaching the evenly divided issue unnecessary. In *Godard*, although our Court included language that could be read as the majority does, the holding was the rule I see: the Constitution "does not provide for a transfer by [the Court of Appeals] to this court of any case where there is an equal division between the judges of the Court of Appeals on an isolated question in the case, and there remain for consideration and decision assignments of error whereby, if error be found that required a judgment of reversal, a consideration of the isolated question would

21

become immaterial." *Atl. C. L. R.R. v. Godard*, 211 Ga. 41, 42 (83 SE2d 591) (1954). Because the Court of Appeals in *Godard* had left undecided issues "where if, upon consideration, it should be determined there were erroneous rulings requiring the grant of a new trial, there would be no necessity to pass on the [evenly-divided issue]," id., the Court held that "the case as it now stands is not subject to be transferred to this court." Id.[12]

We applied the same rule the following year in *Clinard.* See *Atl. C. L. R. Co. v. Clinard*, 211 Ga. 340 (86 SE2d 1) (1955). There, the Court of Appeals was evenly divided on the general grounds and a general demurrer and did not address any of the special grounds raised that could have decided the case. Id. at 342-43. We held that *Godard* controlled and the case was not equally divided under the Constitution. Id.

---

[12] After the Court of Appeals proceeded to decide the other issues in a way that made it necessary to reach the evenly-divided issue, we accepted and decided the case. See *Atl. C. L. R. Co. v. Godard*, 211 Ga. 373 (86 SE2d 311) (1955).

22

This was the state of play when the Equal Division Provision was carried forward into the Constitutions of 1976 and 1983. In 1999, we noted in dicta (and without the question being before us) that a previous decision of the Court of Appeals had not been equally divided because "the Court of Appeals was not equally divided on all questions presented…" *Ford v. Uniroyal Goodrich Tire Co.*, 270 Ga. 730, 731 n.4 (514 SE2d 201) (1999). This imprecise dicta cannot be read to change the *Godard-Clinard* rule that focuses on whether the Court of Appeals decided all the issues that would render unnecessary a decision on an evenly-divided issue. This is especially so given that the *Ford* Court cited *Clinard* as the only case supporting its conclusion.

Finally, we arrive at *Rodriguez*, on which the majority rests most of its analysis. See *Rodriguez v. State*, 295 Ga. 362, 363-65 (1) (761 SE2d 19) (2014). The real question in *Rodriguez* was whether six votes dissenting from a six-judge opinion to affirm should be aggregated to yield an equal division, even though at least one of the

six dissenters voted to vacate instead of reverse. See id. We held that it was proper to aggregate all of the dissenting votes. Id.

I acknowledge that *Rodriguez* focused on whether the Court of Appeals's *judgment* was equally divided, not merely issues that did not change the judgment, and so *Rodriguez* included considerable language that was judgment-focused. But we cannot read that language in a vacuum; we have to read it in the context of what issue was actually present in *Rodriguez* for our decision. And that issue was only whether a vote to vacate could be aggregated with votes to reverse for purposes of yielding an equal division. The holding that such aggregation was proper tells us nothing about what other evenly divided issues also count as equal division.

Moreover, *Rodriguez*'s discussion of our equal-division precedent does not support the majority's conclusion. *Rodriguez* said only that:

> We have addressed the meaning of the Equal Division clause before, and under our precedents, when the full bench of the Court of Appeals has considered every claim of error that might cause the judgment of the trial court to be set aside, and when the full bench is equally divided

24

about whether that judgment must be set aside, there is an "equal division," and the case must be transferred to this Court.

*Rodriguez*, 295 Ga. at 364 (1) (footnote and citation omitted). While this statement described one set of circumstances establishing an equal division, it did not purport to hold that an equal division exists only under those circumstances. So far as I can tell, we have never construed the equal-division clause so narrowly. Until today.

This conclusion is not compelled by any precedent. It is not compelled by any constitutional text. And it is inconsistent with our explanation of the Equal Division Provision's purpose of ensuring that trial judges know what they are to do on remand. See *Rodriguez*, 295 Ga. at 365 n.5 ("If [the Court of Appeals's] split decision were the last word, the trial judge could not possibly be expected to know whether the motion to suppress still stood denied, and in such circumstances, the trial judge could not reasonably be expected to 'carry into full effect in good faith' the decision on appeal. The Equal Division [Provision] keeps a trial judge from being put

into such an untenable position." (quoting OCGA § 5-6-10; punctuation omitted)).

Allowing the two competing Court of Appeals opinions to stand as the final word here puts the trial court into an untenable position on remand. The opinion authored by Judge Markle concludes that the applicability of the higher burden of proof set forth in OCGA § 51-1-29.5 (c) depends on whether the jury finds that Dr. Inthachak provided emergency medical care to Dorothy. In contrast, the opinion authored by Presiding Judge McFadden would hold as a matter of law that OCGA § 51-1-29.5 (c) does not apply in this case. Therefore, even though Presiding Judge McFadden's opinion does not address jury instructions specifically, it would preclude the trial court from instructing a jury to apply that burden of proof in this matter — regardless of whatever contrary arguments Dr. Inthachak might raise in the future. These two positions cannot be reconciled, and cannot be avoided by deciding the case on some other as-yet-undecided ground.

Because neither text nor precedent requires the majority's conclusion, and that conclusion will inevitably place trial courts in untenable positions,[13] I respectfully dissent.

I am authorized to state that Chief Justice Boggs, Justice Bethel, and Justice LaGrua join in this dissent.

---

[13] The trial court in this case, however, need not be placed in such a position. If on remand the Court of Appeals again finds it necessary to take the case whole court, that court will presumably have a fifteenth judge to help break any tie. Two other points also warrant mention.

First, the majority notes that removal of jurisdiction-related language from the 1983 version of the Equal Division Provision might have stripped us of jurisdiction to decide even properly-transferred cases. I agree that the removal of that language is curious, and we usually presume that material changes to text result in a change in meaning. But I am skeptical that application of that presumption would be appropriate here, given another critical presumption that all provisions of the Constitution have meaning. The Equal Division Provision would be pointless and futile if it directed the Court of Appeals to transfer to us cases over which we would then have no jurisdiction. But despite my skepticism, I acknowledge that the question would be tricky, and I express no firm conclusion about it; this dissent addresses only the majority's limited holding.

Second, I agree with Justice McMillian that the substantive question on which the Court of Appeals is equally divided is a question of gravity and great public importance. But for two reasons, I do not join her in supporting certiorari. First, I obviously disagree that certiorari is necessary because I view this case as properly before us under the Equal Division Provision. And second, the importance of having the question decided does not necessarily mean that it is important that we be the court to decide it. The Court of Appeals will now decide the question. Absent serious error in doing so, in my view certiorari will likely not be warranted following that opinion.